In re Gerald Andre VASKO, aka G. A. Vasko, Gerry Vasko, Jerry Vasko, Indiv. and fdba Vasko Electronics, Debtor.

Bankruptcy No. 80–00292.

United States Bankruptcy Court, N. D. Ohio, W. D.

Oct. 7, 1980.

Samuel J. Nugent, Toledo, Ohio, for debtor.

Philip R. Joelson, Toledo, Ohio, trustee in bankruptcy.

## MEMORANDUM AND ORDER OVER-RULING TRUSTEE'S OBJECTIONS TO DEBTOR'S CLAIM OF EXEMPT PROPERTY

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter came on to be heard upon the Trustee's objections to the debtor's claim of exemptions to $800.00 of property as allowed by Ohio's Exemption Statute, *Ohio Rev.Code* Sec. 2329.66(A)(4)(a) and (17). The Trustee argues that these sections are unconstitutional since the Ohio Legislature has limited their application only to bankruptcy proceedings. In pertinent part Sec. 2329.66 provides as follows:

"2329.66 Exempted interests and rights.

(A) Every person who is domiciled in this state may hold property exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order, as follows:

\* \* \* \* \* \*

(4)(a) The person's interest, not to exceed four hundred dollars, in cash on hand, money due and payable, money to become due within ninety days, tax refunds, and money on deposit with a bank, building and loan association, savings and loan association, credit union, public utility, landlord, or other person. *This division applies only in bankruptcy proceedings.* (Emphasis added.)

\* \* \* \* \* \*

(17) The person's interest, not to exceed four hundred dollars, in any property, except that *this division applies only in bankruptcy proceedings.*" (Emphasis added.)

Ohio debtors may claim as exempt only such property specified under *Ohio Revised Code* 2329.66 because, as permitted by 11 U.S.C. § 522(b)(1), the Ohio Legislature has "opted out" of the federal exemption scheme set forth in 11 U.S.C., § 522(d). Section 2329.66.2 *Ohio Rev.Code* provides as follows:

"Pursuant to the 'Bankruptcy Reform Act of 1978', 92 Stat. 2549, 11 U.S.C. 522(b)(1), this state specifically does not authorize debtors who are domiciled in this state to the exempt property specified in the 'Bankruptcy Reform Act of 1978', 92 Stat. 2549, 11 U.S.C. 522(d)."

The Trustee raises two constitutional issues in his attack on Ohio's Exemption Statute:

1. The sections are invalid because they violate the uniformity requirement of Article I, Section 8, Clause 4, of the United States Constitution.

2. The sections are in conflict with the federal Bankruptcy Law and therefore violate the supremacy clause of Article VI, Clause 2, of the United States Constitution.

## I

In his first argument the Trustee maintains that the application of 2329.66(A)(4)(a) and (17), as exemption statutes, violate the uniformity requirement of *Article I, Section 8, Clause 4.*

This article grants Congress the power "To establish * * * uniform laws on the subject of bankruptcies throughout the United States", and can be read together with *Article I, Section 8, Clause 18,* which gives Congress the power "to make all laws which shall be necessary and proper for carrying into execution the foregoing power, and all other powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof."

In support of his position the Trustee relies on *Hanover National Bank v. Moyses,* 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113 (1902). One of the issues presented to the Supreme Court in *Hanover* was whether or not Sec. 6 of the Bankruptcy Act of 1898, which provided that bankrupts shall be allowed the exemptions prescribed by state law in force at the time of the filing of the petition in bankruptcy, violated the constitutional requirement that bankruptcy laws be uniform.

In ruling that Sec. 6 was constitutional, the Supreme Court, at page 188, 22 S.Ct. at page 860 reasoned that:

"The laws passed on the subject must, however, be uniform throughout the United States, but that uniformity is geographical and not personal, and we do not think that the provision of the act of 1898 as to the exemptions is incompatible with the Rule * * *."

Explaining why uniformity exists even through different exemptions will apply in different states the Court held, at Page 190, 22 S.Ct. at page 861:

"We concur in this view, and hold that the system is, in the constitutional sense, uniform throughout the United States when the trustee takes in each State whatever would have been available to the creditors if the bankrupt law had not been passed. The general operation of the law is uniform although it may result in certain particulars differently in different States."

Based on *Hanover* the Trustee contends that uniformity is only satisfied by the use of general state exemption statutes in bankruptcy proceedings. When general exemptions are used, the Trustee receives that which would have been available to creditors in the state if no bankruptcy law had been passed. By denying the Trustee property which creditors can obtain in state courts, since the two exemptions in issue apply only in bankruptcy proceedings, the Trustee argues that the uniformity requirement as propounded in *Hanover* is lacking.

Numerous decisions by various Courts have discussed the uniformity requirement. Judge White in *In re Hill,* 4 B.R. 310 (Bkrtcy.N.D.Ohio, 1980), at Page 314, held that "absolute uniformity in the application of the bankruptcy act is impossible, since Congress cannot create uniform conditions and circumstances in the various states of the Union."

In *Stellwagen v. Clum,* 245 U.S. 605, 38 S.Ct. 215, 62 L.Ed. 507 (1918) at page 613, 38 S.Ct. at page 217, the Supreme Court spoke on the consequences of the application of state law with regard to uniformity holding:

"Notwithstanding this requirement as to uniformity the bankruptcy acts of Congress may recognize the laws of the states in certain particulars, although such recognition may lead to different results in different States. For example, the Bankruptcy Act recognizes and enforces the laws of the States affecting dower, exemptions, the validity of mortgages, priorities of payment and the like. Such recognition in the application of state law does not affect the constitutionality of the Bankruptcy Act, although in

these particulars the operation of the act is not alike in all states."

The *Hanover* case, *supra*, relied on by the Trustee, and the other cases discussed above, have addressed the constitutional requirement of uniformity of Article I, Section 8, Clause 4. Each case has held that recognition or adoption of state law in bankruptcy proceedings does not violate the uniformity requirement of the Constitution. The statute in issue in each of the above cases and particularly in *Hanover*, Sec. 6 of the Act, was a federal statute. In this proceeding the Trustee is objecting to the validity of a state statute. But Article I, Section 8, Clause 4, and Article I, Section 8, Clause 18, are only controlling as to the congressional exercise of power. Each state maintains its sovereign power to pass laws. As the Court held in *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943) at page 359, 63 S.Ct. at page 317:

"The governments of the states are sovereign within territory save only as they are subject to the prohibitions of the Constitution as their action in some measure conflicts with powers delegated to the National Government, or with Congressional legislation enacted in the exercise of those powers."

It was long ago settled that state laws, to the extent that they conflict with the laws of Congress on the subject of bankruptcies, are suspended. While this is true, state laws are thus suspended only to the extent of actual conflict with the system provided by Congress. *See Sturges v. Crowninshield*, 4 Wheat. 122, 4 L.Ed. 529 (1819); *Ogden v. Saunders*, 12 Wheat. 213, 6 L.Ed. 606 (1827). The passage of the new Bankruptcy Code by Congress has not precluded the states from making exemption laws which apply only in bankruptcy proceedings. If an exemption constructed in such a manner is unconstitutional it will be so because it is in conflict with the federal legislation.

## II

The second major argument of the Trustee is that 2329.66(A)(4)(a) and (17) are in conflict with the bankruptcy law, and therefore violate the Supremacy Clause, *Article VI, Clause 2* which provides:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

The Trustee cites *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) which is the leading case concerning the application of the Supremacy Clause in the area of bankruptcy. In *Perez* the Supreme Court set forth the test to determine whether a state statute is in conflict with the bankruptcy law. The Court in *Perez*, at 644, 91 S.Ct. at 1708, determined that, "the test calls for a two–step process of first ascertaining the construction of the two statutes and then determining the constitutional question whether they are in conflict".

Unlike the situation in *Perez*, the Ohio statute in question has no legislative history. Nor are there any reported state court cases interpreting the statute. In a Bankruptcy Court opinion by Judge O'Neill, *In re Bloom*, 5 B.R. 451 (Bkrtcy.N.D.Ohio, 1980) recently decided, the court, in speaking of the Ohio exemption law, 2329.-66(A)(4)(a) and (17) held at page 454:

"Though not as liberal as the Code's exemption, the Ohio law is in conformity with the federal legislative intent to provide the mandated 'fresh start' to debtors in bankruptcy."

A reading of the Ohio law clearly shows that it is an exemption statute with the purpose of protecting debtors and enabling them to achieve a fresh start.

On October 1, 1979, the new Bankruptcy Code became effective. Congress had determined that a new bankruptcy law was needed. In the Committee Report it was noted with respect to the old law:

"The second major problem under current bankruptcy law is the inadequacy of relief that the Bankruptcy Act provides for consumer debtors. The last major revision of the Bankruptcy Act was in 1938, before any significant amount of consumer credit has been extended. In the post–War years, consumer credit has become a major industry, and buying on time had become a way of life for a large segment of the population. The bankruptcy rate among consumers has risen accordingly, but without the required provisions in the Bankruptcy Act to protect those who need bankruptcy relief. This bill makes bankruptcy a more effective remedy for the unfortunate consumer debtor." *House Report* No. 95–595, 95th Cong., 1st Sess. 4 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 5966.

Under the old Act cases the courts held that one of the basic purposes behind the Bankruptcy Law is to provide the debtor with a fresh start. *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934); *Aveni v. Richman*, 458 F.2d 972 (6th Cir., 1972). However it became readily apparent to Congress that the former Act was outdated and was not providing proper relief to debtors. One area of concern to Congress in assuring the debtor a fresh start was the exemption system. The state exemptions were inadequate and did not provide the debtor with sufficient property reasonably necessary to attain a fresh start. Legislative History, *H.Rep.* No. 95–595, 95th Cong.; 1st Sess. 126–127 (1977), U.S. Code Cong. & Admin.News 1978, p. 6087:

"However, some state exemption laws have not been revised in this century. Most are outmoded, designed for more rural times, and hopelessly inadequate to serve the needs of and provide a fresh start for modern urban debtors. The historical purpose of these exemption laws has been to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge. The purpose has not changed, but neither have the level of exemptions in many states. Thus, the purpose has largely been defeated.

Though exemption laws have been considered within the province of state law under the current Bankruptcy Act, H.R. 8200 adopts the position that there is a federal interest in seeing that a debtor goes through bankruptcy comes out with adequate possessions to begin his fresh start. Recognizing, however, the circumstances do vary in different parts of the country, the bill permits the states to set exemption levels appropriate to the locale and allows debtors to choose between the State exemptions and the Federal exemptions provided in the bill. Thus, the bill continues to recognize the States' interest in regulating credit within the States, but enunciates a bankruptcy policy favoring a fresh start."

The new Bankruptcy Code contains other features which indicate a swing towards affording the debtor a greater start afresh after bankruptcy. One of these sections, *11 U.S.C., § 522(f)*, permits the debtor to avoid the fixing of certain liens upon household goods, tools, and certain health aids to the extent that such liens impair the debtor's allowed exemption, if such liens are either judicial liens or nonpossessory, nonpurchase money security interests. The Legislative History of 522(f) indicates this shift towards favoring the debtor and assuring him of a fresh start:

"Subsection (f) protects the debtor's exemptions, his discharge, and thus his fresh start by permitting him to avoid certain liens on exempt property. The debtor may avoid a judicial lien on any property to the extent that the property could have been exempted in the absence of the lien, and may similarly avoid a nonpurchase–money security interest in certain household and personal goods. The avoiding power is independent of any waiver of exemptions." *House Report* No. 95–595, 95th Cong. 1st Sess. (1977) 362, U.S.Code Cong. & Admin.News 1978, p. 6318; *Senate Report* No. 95–989, 95th Cong. 2d Sess. (1978) 76 (under subsection [e]).

After reviewing the Legislative History of the new Code and the construction of Ohio's exemption statute the Court is now in a position to determine whether the Ohio Statute is in conflict with the federal law. In *Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941) at 67, 61 S.Ct. at 404, the Supreme Court held:

"Our primary function is to determine whether, under the circumstances of the particular case, Pennsylvania's law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

Indeed the " * * * purpose of Congress is the ultimate touchstone." *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103, 84 S.Ct. 219, 223, 11 L.Ed.2d 179 (1963).

■ The purpose of Congress in passing the new Bankruptcy Code was to give debtors a "fresh start". Being highly concerned with the inadequacy of existing state exemption laws, Congress formulated federal exemptions. In a compromise between the House and the Senate, the states were allowed to "opt out" under Section 522(b)(1) from the federal exemption scheme. However, as the legislative history indicates, Congress had hoped that the states would update and revamp the existing laws, bringing them closer into line with the federal exemptions. Basically this is what Ohio has done.

In *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1970), the Supreme Court strictly followed the rule of *Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 and looked to the effect of the state law on "Congress' policy of giving discharged debtors a fresh start." *Perez* 402 U.S. at 650, 91 S.Ct. at 1711. That is what the court must do here, look at the effect of the state law on Congress' intent. It is evident that Ohio's law does not interfere with, impede, or conflict with the Congressional policy of giving debtors a fresh start.

In contending that 2329.66(A)(4)(a) and (17) violate the Supremacy Clause, the Trustee relies heavily on *In re Kanter*, 505 F.2d 228 (9th Cir., 1974). In *Kanter*, the Ninth Circuit held that a provision in the California Code was in conflict with Section 70 of the Bankruptcy Act. The effect of this California statute was to deny the Trustee in Bankruptcy the right to claim a vested interest in a personal injury action of the bankrupt.

In *Kanter* the Court held at 231, that "one of the purposes of the bankruptcy law has been to bring about a ratable distribution among creditors of a bankrupt's assets * * * " (citations omitted). The Court also noted that because the California statute denied, "to the trustee assets which could ordinarily be reached in satisfying the claims of the general creditors", *Kanter* at 231, it stood as an obstacle to the fulfillment of the objectives of Congress.

This case can be distinguished from the present situation for a number of reasons. The *Kanter* case was decided under the old Bankruptcy Act. The court held that the California statute was a sequestration statute, not an exemption statute. Because the statute denied a Trustee in Bankruptcy the same rights that other judgment creditors had, it conflicted with Section 70 of the Bankruptcy Act and was invalid. In the present case the Court is confronted with an exemption statute not a sequestration statute. Therefore, because the purposes and objectives of a sequestration statute and an exemption statute are different, the *Kanter* case is distinguishable and its logic cannot be applied to the present case.

Under the present Code, Congress has enacted a scheme of federal exemptions under Section 522. The federal exemptions not only demonstrate the strong desire of Congress to give debtors a fresh start, but also present a situation in which a trustee will be denied assets which a general creditor might be able to obtain outside of bankruptcy proceedings. In a state in which the debtor may choose between the federal and state exemptions, it is likely that the trustee will not be able to obtain the same assets as a general creditor in a state court. In order to assure that debtors would achieve a fresh start, Congress included in the new Bankruptcy Code a liberal exemp-

tion scheme and encouraged the states to update and liberalize their own exemption statutes. By passing 2329.66(A)(4)(a) and (17), the Ohio Legislature has complied with the intent of Congress.

 Finally it should be noted that the Trustee, in his objection to the Debtor's exemptions, and in his brief, raises two further constitutional issues. These are that 2329.66(A)(4)(a) and (17) violate Article IV, Section 2, the Privileges and Immunities Clause of the Constitution, and the Equal Protection Clause of the XIV Amendment to the Constitution. However neither of these issues have been argued by the Trustee in his brief. In deciding the validity of the Ohio law with regard to these two issues, the Court cannot rule that the statute is unconstitutional in the absence of any citations or arguments by the Trustee. Absent a clear showing that the Ohio law is unconstitutional, the Court must defer to the Legislature and accept the constitutionality of the statute in question. *Schilb v. Kuebel*, 404 U.S. 357, 92 S.Ct. 479, 30 L.Ed.2d 502 (1971); *Home Telephone Co. v. Los Angeles*, 211 U.S. 265, 29 S.Ct. 50, 53 L.Ed. 176 (1908); *Sweet v. Rechel*, 159 U.S. 380, 16 S.Ct. 43, 40 L.Ed. 188 (1895). In *Sweet* at 392–93, 16 S.Ct. at 46 the Supreme Court held:

> "But in determining whether the legislature, in a peculiar enactment, has passed the limits of its constitutional authority, every reasonable presumption must be indulged in favor of the validity of such enactment. It must be regarded as valid, unless it can be clearly shown to be in conflict with the constitution. It is a well settled rule of constitutional exposition, that if a statute may or may not be according to the circumstances, within the limits of legislative authority, the existence of the circumstances necessary to support it must be presumed." (citations omitted)

In a well reasoned opinion by Judge O'Neill, *In re Bloom*, 5 B.R. 451 (Bkrtcy.N.D.Ohio, 1980), it was held that 2329.-66(A)(4)(a) and (17), *Ohio Rev.Code*, did not violate the equal protection clause. In ruling so the Court held at page 453:

> "Unquestionably, the Ohio legislature treated bankrupt and non–bankrupt debtors differently. The rationale for the distinction is to provide the former with the requisite 'fresh start'. Being fully aware of the unique problems confronting the bankrupt debtors' quests for financial rehabilitation, the Legislature employed reasonable classification of persons to accomplish this end. The Legislature was cognizant that the commencement of a bankruptcy case creates an estate comprised of all of the debtor's property (Section 541, T. 11 U.S.C.A.). Unlike nonbankrupt debtors, the financially distressed bankrupt is in a substantially different posture. He literally relinquishes his earthly possessions without which he is impecunious and relegated to welfare status to his degradation and to the detriment of the taxpayers. The alleviation of this onus is a legitimate State interest which justifies a rational basis for resuscitating the bankrupt and relieving the State of an added burden."

In conclusion, Congress is vested with the constitutional authority to enact a uniform system of bankruptcy. Congress has, in certain situations, chosen to recognize and adopt the laws of the states in bankruptcy proceedings. Even though the application of such laws may differ among the states, the Supreme Court has ruled that this action by Congress is constitutional. Furthermore, the restrictions placed by Article I, Section 8, Clause 4, on Congress do not apply to the sovereign power of the states to pass laws. Therefore state exemption laws used in bankruptcy proceedings do not and cannot violate the uniformity requirement.

 In order for a state law to conflict with a federal law it must frustrate the purpose of Congress. The state law must in its effect, obstruct the basic objectives of the federal law. After examining the construction of the state and federal law, the Court must determine if a conflict exists. In the absence of conflict the state law will stand. After reviewing the Ohio law and

its effect on the new Bankruptcy Code, it is apparent that no conflict exists.

Accordingly, the Trustee's objections are not well taken and should be overruled.