**In the Matter of BORNE CHEMICAL COMPANY, INC., a corporation of the State of New Jersey, Debtor.**

**Bankruptcy No. 80–00495.**

United States Bankruptcy Court, D. New Jersey.

March 15, 1984.

On Reconsideration May 9, 1984.

Frank Vecchione, Crummy, Del Deo, Griffinger & Vecchione, Newark, N.J., for debtor.

Gilbert Backenroth, Hahn & Hessen, New York City, for Lincoln 1st Commercial Corp.

Rebecca Fields, Trenton, N.J., for Irwin Kimmelman, Atty. Gen., for State of N.J.

## OPINION

D. JOSEPH DeVITO, Bankruptcy Judge.

At a hearing held on December 13, 1983, the Court considered the application of the debtor, Borne Chemical Company, Inc., seeking approval of two agreements authorizing the debtor to sell two parcels of real property, one to Bruncor Corp. for the sum of $425,000—the other to Valley Forge Engineering Co. for $100.00. At the conclusion of the hearing and upon its finding that it was in the best interests of the estate, the Court approved the agreements which had, in fact, been executed on November 30, 1983. Borne is in the process of liquidating all of its assets in order to provide funds for a plan of reorganization.

At the above noted hearing, the New Jersey Department of Environmental Protection (DEP), relying in part on the New Jersey Environmental Cleanup Responsibility Act (ECRA), objected to the proposed sales.

There now follows the opinion of the Court read into the record on February 23, 1984, as edited and supplemented.

ECRA, signed into law on September 2, 1983, to become operative on December 31, 1983, imposes preconditions on the sale, transfer or closure of "industrial establishments". All parties appear to agree that subject properties fall within the definition of industrial establishments.

ECRA requires an "owner ... of an industrial establishment planning to sell ... operations" to notify the DEP in writing within five days of the execution of an agreement of sale. ECRA further requires that within 60 days before transfer of title, the owner or operator must submit either a negative declaration to the DEP stating that there are no environmental hazards, or file a cleanup plan. Upon approval of the plan, the owner must post a bond or other security guaranteeing performance of the cleanup and remains responsible for imple-

menting the plan unless the purchaser assumes that responsibility.

ECRA further provides that the DEP or transferees can void the sale if the transferor fails to comply with any provision of the Act, and that penalties of up to $25,000 per day may be imposed on those who fail to comply. The Act also provides that obligations imposed by the Act are intended to "constitute continuing regulatory obligations imposed by the state" and are not to be considered as liens or claims dischargeable in bankruptcy.

Although ECRA was not operative at the time the sales agreements were being considered for approval, the DEP urged the Court to employ its equitable powers and condition approval on compliance with the Act. This, the Court refused to do.

Though the agreements contemplated closing by December 22, 1983, the parties were unable to close by that date. The debtor and Bruncor are now ready to close. However, as stated in the applications submitted by the debtor, the DEP demands compliance with ECRA and has threatened to void the sale and impose penalties against Borne if the agreement is closed prior to fulfilling ECRA requirements.

The debtor now moves for an order declaring

1. that it can close its agreement with Bruncor without complying with ECRA;

2. that the DEP cannot void the sale; and

3. that Bruncor has no obligation to perform any acts required under ECRA.

In support of its motion, Borne argues that the December 13, 1983 order of the Court approving the sale and authorizing the debtor to "execute and deliver all documents of title, to accept payment therefor and to do all things necessary to consummate said sales without further notice to debtors or interested parties" precludes application of ECRA. The December 13, 1983 order was not appealed.

Borne further argues that in the event the December 13 order does not preclude the applicability of ECRA, the Court should find that ECRA is preempted by the Bank-

ruptcy Code, 11 U.S.C. § 101 *et seq.* The Court is unable to reach that conclusion.

Paragraph 6 of the order authorizes the debtor to "do all things necessary to consummate said sales without further notice to creditors or other interested parties." Had the parties transferred title prior to the operative date of ECRA, as the parties and this Court contemplated at the time the order was entered, there can be little question that ECRA would not apply, essentially the finding of this Court at the hearing of December 13, 1983. See transcript of that date. The Court's approval of the contract of sale was premised upon the foregoing considerations. However, title did not pass prior to the operative date. Thus, this Court must decide whether one of the "things necessary to consummate said sales" is that it comply with ECRA. In sum, the initial question is whether the owner of an "industrial establishment" must comply with ECRA if an agreement of sale was executed, but not closed, prior to December 31, 1983.

There is no provision in ECRA dealing with the factual situation before the Court. However, the Interim Environmental Cleanup Responsibility Act Regulations, N.J.A.C. 7:1–3 (ECRA Regulations) do, in fact, deal with the particular facts and circumstances present here. ECRA Regulations 7:1–3 provides, in pertinent part:

[b] Any owner or operator of an industrial establishment planning to close, terminate or transfer operations or sell or transfer title of an industrial establishment on or after December 31, 1983 shall be subject to all the provisions of the Act and this subchapter.

[c] The owner or operator of an industrial establishment that initiated the closure or transfer of title prior to December 31, 1983 but will not complete the closure operations or transfer of title until on or after December 31, 1983 shall be subject to all the provisions of the Act and this subchapter provided that the following exceptions to N.J.A.C. 7:1–3.7 and 3.8 shall apply:

1. Initial notice of the closure or transfer of title of these industrial establishments may be submitted to the Department five days from December 31, 1983 or until January 5, 1984.

2. Negative declarations or cleanup plans, as appropriate, may be submitted to the Department for approval 60 days from December 31, 1983 or until March 1, 1984.

Pursuant to the above quoted regulation, the owner of an industrial establishment who fails to complete the transfer of title by the operative date of ECRA is still subject to the provisions therein. Certain time requirements were extended so that compliance with the statute was not impossible. It follows that, unless the Court determines that ECRA is preempted by the Bankruptcy Code, Borne is subject to the provisions of ECRA.

The United States Constitution, Article VI, clause 2, provides in pertinent part that "[t]his Constitution, and the Laws of the United States, which shall be made in pursuance thereof ... shall be the supreme Law of the Land ..." The Constitution, Article 1, § 8, clause 4 authorizes Congress "[t]o establish ... uniform Laws on the subject of Bankruptcies throughout the United States." The present Federal Bankruptcy Law is derived from the above grant of authority. The specific question to be addressed is whether, under the Supremacy Clause of the Constitution, ECRA is preempted by the Bankruptcy Code.

In the landmark case of *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), the Court sets forth a two-step process for analyzing preemption questions, stating that the two-step process involves "first ascertaining the construction of the two statutes and then determining the constitutional question whether they are in conflict." *Perez, supra,* 402 U.S. at 644, 91 S.Ct. at 1709. Ascertaining the construction of the two statutes involves a determination of the legislators' intended purposes. *Id.* at 644–48, 91 S.Ct. at 1708–11. Notwithstanding a legitimate state purpose, a state statute is superseded if it

has the effect of interfering with the objectives underlying the federal law. *Id.* at 650–52, 91 S.Ct. at 1711–13.

The law as explained in *Perez* has been refined and elaborated upon by the United States Supreme Court. In *Pacific Gas & Electric Co. v. State Energy Resources Conservation and Development Commission,* 461 U.S. 190, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983), the Supreme Court sets forth the following overview of preemption rules:

> It is well-established that within Constitutional limits Congress may preempt state authority by so stating in express terms. *Jones v. Rath Packing Co.,* 430 U.S. 519, 525 [97 S.Ct. 1305, 1309, 51 L.Ed.2d 604] (1977). Absent explicit preemptive language, Congress' intent to supercede state law altogether may be found from a "scheme of federal regulation 'so pervasive as to make reasonable the inference that Congress left no room to supplement it," "because the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject," or because "the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose." *Fidelity Federal Savings & Loan Ass'n v. de la Cuesta,* [458] U.S. [141], [153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664] (1982); *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 [67 S.Ct. 1146, 1152, 91 L.Ed. 1447] (1947). Even where Congress has not entirely displaced state regulation in a specific area, state law is preempted to the extent that it actually conflicts with federal law. Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142–143 [83 S.Ct. 1210, 1217, 10 L.Ed.2d 248] (1963), or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidow-*

*itz,* 312 U.S. 52, 67 [61 S.Ct. 399, 404, 85 L.Ed. 581] (1941).

*See also Silkwood v. Kerr-McGee Corp.,* 464 U.S. 238, 248, 104 S.Ct. 615, 621, 78 L.Ed.2d 443 (1984).

A review of the Bankruptcy Code fails to disclose any provision wherein Congress explicitly states that the Code supersedes all state law. Thus, the Court must consider whether Congress provided a scheme of federal regulation which entirely displaces state regulation, thereby preempting any state law concerning that area. The Sixth Circuit United States Court of Appeals has recently observed that "[i]t is fundamental that the state and federal legislatures share concurrent authority to promulgate bankruptcy laws ..." *Rhodes v. Stewart,* 705 F.2d 159, 163 (6th Cir.1983) (citing *Sturges v. Crowningshield,* 17 U.S. (4 Wheat) 119 (sic), 4 L.Ed. 529 (1819) (holding that a state has the authority to pass a bankruptcy law provided it does not impair the obligation of contracts nor conflict with federal bankruptcy law). Furthermore, the Bankruptcy Code specifically provides for the application of state bankruptcy law, or state law in general, under certain circumstances. *See, e.g.,* 11 U.S.C. § 522[b] (state law bankruptcy exemptions); 28 U.S.C. § 959[b] (trustee or debtor in possession shall manage or operate property in accordance with state law where it is situated); *See also In re Vasko,* 6 B.R. 317, 323 (Bankr.N.D.Ohio 1980). By reason of the foregoing, the Court finds that federal bankruptcy legislation is not so pervasive as to preclude enforcement of state laws on the same subject.

Notwithstanding this finding, it remains for the Court to consider whether federal bankruptcy regulations leave any room for state supplementation which, in turn, necessarily rests on whether the purposes and obligations underlying both the Code and state statute are essentially identical. At least two general purposes of federal bankruptcy legislation have been noted. 4 *Collier on Bankruptcy* ¶ 67.01, p. 15 (14th ed. 1976), has explained "[t]he original and primary purpose of bankruptcy legislation has

been, and continues to be, a fair and equitable distribution of the nonexempt property of a bankrupt person to and among his [or her] creditors." In *In re Vasko, supra,* the court observed that "[t]he purpose of Congress in passing the Bankruptcy Code was to give debtors a "fresh start". *Id.* at 322.

Although legislative history supporting ECRA is nonexistent, the purposes underlying ECRA appear to be a legislative plan providing for a rational and orderly way of minimizing potential risks associated with the generation, handling, storage, and disposal of hazardous substances. To fulfill this purpose, preconditions were imposed upon the transfer of property containing hazardous substances. Generally, the purposes underlying the Bankruptcy Code and those underlying ECRA are not even remotely related.

The debtor, however, contends that the Bankruptcy Code, "by its very nature", demonstrates that Congress intended to prempt "all state efforts to regulate the disposition of property in custody of the estate;" further, that ECRA is preempted because of its actual conflict with the Bankruptcy Code's objective to provide an equitable, orderly and expeditious distribution of assets to creditors. The Court notes that Borne does not argue the preemption of ECRA for the reason that it is impossible to comply with the provisions of ECRA and/or those of the Code. Accordingly, the Court does not address that issue.

The debtor's contention that the "nature" of the Bankruptcy Code requires a finding that Congress intended to preempt all state laws regulating the disposition of property of the estate is unconvincing. The Court notes that no effort was made to support debtor's contention.

While section 363[b] provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate, 11 U.S.C. § 363[b], the Code does not set forth a standard for determining when the Court may authorize such a sale. As a general rule, the Court is guided by the "best interest of the estate" test. This does not, however, preclude the Court from examining state law to determine whether there are any conditions which must be met prior to sale. *See Artuc v. Alaska Department of Labor,* 718 F.2d 1446 (9th Cir. 1983).

Having concluded that the Bankruptcy Code does not occupy the entire field of law relating to the sale of property in a debtor's estate, it is necessary to determine whether ECRA "stands as an obstacle to the accomplishment and execution of the full purposes and objectives" of the Code.

This Court agrees that one of the primary purposes of the Code is to provide for an equitable, orderly and expeditious distribution of the assets of the estate. This is particularly true in Chapter 7. The purpose of the normal Chapter 11 case is to allow a financially distressed debtor to effectively rehabilitate itself. In furtherance of these objectives Congress enacted § 363[b] which, as noted above, authorizes the trustee or debtor in possession to sell property outside the normal course of business.

The Court is not of the opinion that ECRA stands as an obstacle to the objectives of the Code. To be sure, compliance with ECRA's provisions may impose costs on the debtor, thereby diminishing funds available for distribution to creditors or for rehabilitative efforts.[1] However, that result does not lead us to conclude that the state has created priorities in conflict with those embodied in the Bankruptcy Code. *See Artus v. Alaska Department of Labor,* 718 F.2d 1446 (9th Cir.1983). Nor does

---

1. Subsection 4[c] of chapter 330 of ECRA provides that the implementation of the cleanup plan in detoxification is the obligation of the owner or operator. Environmental Cleanup Responsibility Act, P.L. 1983, ch. 330, 4[c] (to be codified at N.J.S.A. 13:1K–9). However, that section further provides that the responsibility for such implementation may be assumed by the purchaser, transferee, mortgagee, or other party to the transfer. *Id.* Thus, ECRA does not necessarily impose the costs of cleanup on the debtor.

ECRA interfere with the Code's objectives of offering an equitable and orderly distribution of the estate's assets. The debtor's remaining assets, after compliance with ECRA, may be distributed to creditors in accordance with the Code or may be used in the reorganizational effort.

Of relevant significance, the Code itself suggests that Congress did not intend to promote the above mentioned objectives "at all costs". *Cf. Pacific Gas & Electric Co., supra,* 103 S.Ct. at 1731–1732 (California moratorium on construction of nuclear power plants not preempted by Atomic Energy Act notwithstanding that primary purpose of the Act is to promote nuclear power). Of further relevant significance are the provisions of § 362[a] of the Code, 11 U.S.C. § 362[a], which provides for one of the fundamental protections afforded to all debtors, namely, imposition of the automatic stay. The stay enjoins all collection and foreclosure actions, permitting either orderly liquidation whereby all creditors are treated equally or an attempt to file a plan of reorganization. Notwithstanding these provisions, § 362[b][4] allows governmental units to commence or continue actions or proceedings to enforce police or regulatory powers. *See* 11 U.S.C. § 362[b][4]. Section 362[b][5] allows the enforcement of an injunction obtained by a governmental unit in furtherance of its police or regulatory powers, even though such an injunction could effectively foreclose the opportunity to reorganize. Thus, while § 362[b][4] and [5] do not explicitly mandate that assets must be sold in compliance with state or federal regulatory provisions, they suggest that Congress did not intend that the objectives of the Bankruptcy Code are to be accomplished at the expense of the general public welfare.

■ Finally, though the assets in question are property of the estate, *see* 11 U.S.C. § 541, and under the exclusive jurisdiction of the bankruptcy court, *see* 28 U.S.C. § 1471[e], that fact alone does not suggest that the Court is without the power to deny the sale of property pursuant to § 363[b] unless the sale complies with applicable state and federal regulatory provisions, such as ECRA. Since the Court does have jurisdiction over the property, it can condition approval of the sale on compliance with the relevant regulatory requirements.

Neither the provisions of § 363[b] nor its legislative history suggests that sales of assets in bankruptcy should be immune from regulatory provisions which apply inside and outside of bankruptcy and are aimed at promoting the public health and welfare. This position is supported by precedent involving the transfer of state and federal regulatory licenses in bankruptcy proceedings. As noted by the United States Court of Appeals for the Fifth Circuit, "the most substantial and persuasive line of authority establishes that any transfer of a state or federal license or certificate is subject to the continuing jurisdiction and approval of the applicable agency." *Pension Benefit Guaranty Corp. v. Braniff Airways, Inc.,* 700 F.2d 935, 942 (5th Cir.1983) (citations omitted).

The nature of the property that Borne proposes to sell is obviously distinguishable from licenses or certificates. They are all, however, property of the estate as defined by 11 U.S.C. § 541, and may be sold pursuant to 11 U.S.C. § 363[b]. Accordingly, just as the sale of licenses and certificates may be conditioned on compliance with federal or state requirements, the sale of real estate should be subject to federal or state regulatory provisions, such as ECRA.

■ In summary, for all the foregoing reasons, the Court finds that ECRA does not conflict with the Bankruptcy Code and is, therefore, not preempted by the provisions of the Bankruptcy Code. Accordingly, the relief requested by the debtor is denied in its entirety.

## ON RECONSIDERATION

This opinion addresses three motions brought on by the above Chapter 11 debtor, Borne Chemical Company, Inc. (Borne), the first of which seeks reconsideration and amendment of the Court's oral opinion of

February 23, 1984, as supplemented by its written opinion dated March 15, 1984, wherein the Court conditioned Borne's proposed sale of a parcel of real property, Parcel A, upon its compliance with the New Jersey Environmental Cleanup Responsibility Act (ECRA), P.L. 1983, ch. 330, N.J.S.A. 13:1K–6 *et seq.*, and its accompanying regulations, N.J.A.C. 7:1–3 *et seq.*

Borne further seeks an order, pursuant to 11 U.S.C. § 554, authorizing the abandonment of a parcel of real property, Parcel B, without complying with ECRA and its regulations. Finally, Borne requests of this Court that, in the event it does not reverse its position to allow the sale of Parcel A free of ECRA requirements, cessation of operations on Parcel A, without regard to ECRA regulations, be authorized.

In its prior opinion, the Court ruled that the ECRA provisions, applicable to the sale of Parcel A, are not preempted by the Bankruptcy Code and must be complied with. In its opinion, the Court set forth the following analysis, as outlined by recent Supreme Court decisions, for determining whether state laws are preempted by federal legislation.

1. Does Congress explicitly provide that federal legislation supersedes state law on a particular subject.

2. Is there a scheme of federal regulation so pervasive as to make reasonable the inference that Congress left no room for its supplementation.

3. Is compliance with both the federal and state law a physical impossibility.

4. Does state law stand as an obstacle to the accomplishment and execution of the full purposes of the Bankruptcy Code.

The Court ruled that Congress did not explicitly or implicitly preempt ECRA as it applies to the sale of property in bankruptcy proceedings, and that ECRA does not stand as an obstacle to the accomplishment of the full purposes and objectives of Congress. Since Borne did not raise the question prior to the issuance of its ruling, the Court did not determine whether compliance with the Code and ECRA is a physical impossibility.

Borne now requests the Court to amend its opinion by adding findings of fact which, in its view, demonstrate that dual compliance is physically impossible. Additionally, Borne urges the Court to reconsider the ruling that ECRA does not stand as an obstacle to the accomplishment and execution of the full purposes of the Code.

At the hearing on the motion for reconsideration, it was noted that, in addition to Parcels A and B, the debtor's assets consist of $350,000 in cash and receivables, and that the debtor was indebted to secured, super priority, and priority creditors in the approximate sum of $800,000. In support of its motions, the debtor requests the Court to take notice of its opinion dated December 2, 1983, wherein the Court considered (1) the application of Lincoln First Commercial Corporation (a super priority secured creditor) for an order directing Borne to turn over proceeds of accounts receivable and other collateral subject to its security interest and, further, to enjoin Borne from paying other creditors until Lincoln was paid in full, and (2) the cross motion of Borne for an order authorizing payment of interim attorney's fees and administrative expenses prior to turnover of any of the funds to Lincoln. Although an order has not been entered, the Court's opinion denied Lincoln's application for turnover and held that the interim attorney's fees and other administrative expenses could be paid from the funds subject to Lincoln's security interest, provided the requirements of § 506[c] are satisfied. Borne contends that the December 2d opinion effectively precludes Borne from spending any funds to comply with ECRA, concluding that, since compliance with the initial filing provisions requires the expenditure of funds, ECRA is preempted under the "impossibility" test.

As explained in *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), a state law or regulation is preempted by a federal law or regulation

"where compliance with both . . . is a physical impossibility." To illustrate an example of physical impossibility, the Supreme Court cited a hypothetical federal law which prohibits the marketing of avocados having a 7 per cent oil content and a state regulation excluding from the state any avocado having less than 8 per cent oil. *Id.* at 143, 83 S.Ct. at 1217. Such impossibility does not exist in the instant case. The impossibility cited by Borne arises from a Court order, not from a specific Code section. Both the Code and ECRA allow property to be sold, out of the ordinary course of business, in a bankruptcy proceeding. ECRA poses an obstacle to the sale of property in bankruptcy only in instances where the estate does not have funds to comply with ECRA. If the estate does have the resources, ECRA poses no barrier to the sale. Thus, ECRA is not preempted under the physical impossibility standard.

We turn now to the question of whether the Court will reexamine and change its holding that ECRA, as applied to bankruptcy sales outside the ordinary course of business, does not stand as an obstacle to the accomplishment of the objectives and purposes of the Code. Upon reconsideration, the Court finds no reason to alter its ruling. In arguing for reconsideration, the debtor relies heavily on *California State Board of Equalization v. Goggin*, 245 F.2d 44 (9th Cir.1957), and other cases which hold that liquidation sales authorized by the bankruptcy court are not subject to state sales taxes, whether the tax is the primary obligation of the seller or the buyer. These decisions, however, do not address the question of whether bankruptcy courts may authorize sales notwithstanding failure of compliance with state laws such as ECRA.[1] For the reasons stated in the Court's February 23 oral opinion, as supplemented by the March 15 written opinion, Borne's motion for reconsideration is denied. In addition to the reasons previously discussed, the Court notes that § 363[1] of the Code explicitly authorizes the sale of property notwithstanding certain restrictions imposed by otherwise applicable (nonbankruptcy) law. Subsection [1], however, does not make reference to conditions of sale which, like ECRA, are not based on the insolvency or financial condition of the debtor.

The Court now turns to the debtor's motion for an order allowing it to abandon Parcel B pursuant to 11 U.S.C. § 554. That provision authorizes abandonment "of any property of the estate that is burdensome to the estate or that is of inconsequential value to the estate." The New Jersey Department of Environmental Protection objects to abandonment unless Borne fulfills the ECRA requirements which apply equally to the sale or abandonment of property.

█ It cannot be disputed that Parcel B is burdensome to the estate and is of inconsequential value. The property is subject to a mortgage held by Lincoln First Commercial Corporation. There is no dispute that Borne does not have equity in the property. In addition, the property admittedly is subject to considerable environmental problems, as evidenced by the debtor's inability to find a purchaser willing to pay more than $100.00.

Thus, the sole question is whether abandonment should be conditioned on compliance with ECRA. In light of the rationale and ruling of *New York v. O'Neill (In the Matter of Quanta Resources Corp.)*, No.

---

1. The case of *In re Farmers Markets, Inc.*, 36 B.R. 829 (Bankr.E.D.Ca.1984) is also relevant to the question under consideration. The court therein held that a California statute conditioning the sale of liquor licenses upon the payment of certain tax liabilities was not applicable. In so holding, the court relied upon 11 U.S.C. § 541[c][1][A], which reads in pertinent part: "an interest of the debtor in property becomes property of the estate . . . notwithstanding any provision [A] that restricts or conditions transfers of such interest by the debtor." Though § 541 was undoubtedly intended to broaden the types of property which become property of the estate upon the filing of a petition under the Bankruptcy Code, it does not address the question of when property of the estate may be sold. Accordingly, this Court will not rely on the *Farmers Market* case to reach the conclusion that ECRA is not applicable to the sale of property in bankruptcy proceedings.

82–3524 (D.N.J. Jan. 24, 1983), in which Judge Lacey ruled that burdensome property could be abandoned notwithstanding that such abandonment violated certain environmental statutes relating to the disposal of hazardous wastes, Borne's motion to abandon Parcel B without complying with ECRA is granted. *See also Sarf v. New York* (In re Adelphi Hospital Corp.), 579 F.2d 726 (2d Cir.1978) (trustee of hospital may abandon hospital records regardless of state law to contrary). Though *Quanta* involved abandonment by a trustee in a Chapter 7 case, the court perceives no limitation on the rationale of that decision's applicability to abandonment in the context of a Chapter 11 case.

The final motion before the Court is for an order authorizing Borne to cease all operations and to secure all property remaining on Parcel A, free of the obligations imposed by ECRA. The ECRA obligations, which come into play upon the cessation of operations, are substantially similar to those imposed upon the sale or transfer of property, namely, notice of cessation accompanied by preliminary disclosure requirements and the subsequent filing of a negative declaration, or the filing and implementation of a cleanup plan, along with the posting of a surety bond or other financial security to guarantee performance of the plan.

The record indicates that Borne is engaged in minor operations on Parcel A, resulting in losses of approximately $5,000 per week. In light of the decision prohibiting the sale of Parcel A, absent compliance with ECRA, Borne wishes to cease operations in order to reduce the losses to the estate.

Arguably, 28 U.S.C. § 959[b] requires Borne to follow the ECRA provision if it wishes to cease operations. Section 959[b] provides, in pertinent part, that:

A trustee, receiver or manager in any cause pending in any court of the United States, including a debtor in possession, shall manage and operate the property in his possession ... according to the requirements of the valid laws of the state in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof.

■ The purpose of the statute is to negate the idea that a trustee or debtor in possession "could ignore the rules of law of the state of operation affecting the conduct of the business committed to his charge." *Palmer v. Webster & Atlas National Bank,* 312 U.S. 156, 166, 61 S.Ct. 542, 547, 85 L.Ed. 642 (1941). Thus, a receiver operating a railroad must obey local speed limits, *see Erb v. Morasch,* 177 U.S. 584, 20 S.Ct. 819, 44 L.Ed. 897 (1900); a receiver operating an oil refining company must obtain a license and bond required by state law, *see Gillis v. California,* 293 U.S. 62, 55 S.Ct. 4, 79 L.Ed. 199 (1934), and a trustee operating an apartment building must comply with state rent control guidelines. *See Finn v. 415 Fifth Ave. Co.,* 153 F.2d 501 (2d Cir.1946). However, no case law has been cited applying § 959[b] or its predecessor to statutes such as ECRA in situations where the receiver, trustee or debtor in possession was in the process of closing down operations. In sum, it appears that § 959[b] is applicable only where the property is being managed or operated for the purpose of continuing operations, which is not the case under the present circumstances. Accordingly, in order to prevent continued operating losses, Borne is authorized to cease all operations and secure all property on Parcel A, free of ECRA requirements.

As a final recap, the Court denies the motion to reconsider and alter its previous opinion requiring Borne to comply with the ECRA requirements applicable to the sale of Parcel A; grants the motions to abandon Parcel B and cease operations on Parcel A without complying with ECRA.

Submit an order in accordance with the above opinion.