In re ADELPHI HOSPITAL
CORP., Bankrupt.

Lawrence SARF, Trustee in Bankruptcy
of Adelphi Hospital Corp., Appellee,

v.

NEW YORK STATE DEPARTMENT OF
HEALTH, Appellant.

No. 786, Docket 77–5035.

United States Court of Appeals,
Second Circuit.

Argued March 29, 1978.

Decided June 26, 1978.

---

Robert S. Hammer, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen., Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel), for appellant.

Harold S. Berzow, New York City (Finkel & Goldstein, New York City, of counsel), for appellee.

Before FEINBERG, MANSFIELD and OAKES, Circuit Judges.

PER CURIAM:

This appeal presents the question whether the New York State Department of Health (Department of Health) may require of the trustee of a bankrupt hospital corporation that he maintain and store patients' medical records for a prescribed period of time, as it requires of solvent hospitals. The bankruptcy court, Joseph V. Costa, *Judge,* held that the Department could not, and that the bankruptcy trustee could accordingly abandon the records. *In re Adelphi Hospital Corp.,* No. 74B617 (E.D.N.Y.

Mar. 22, 1976); *In re Adelphi Hospital Corp.,* No. 74B617 (E.D.N.Y. May 14, 1976) (order authorizing abandonment). The United States District Court for the Eastern District of New York, George C. Pratt, *Judge,* affirmed the bankruptcy court. *In re Adelphi Hospital Corp.,* No. 77C243 (E.D. N.Y. Oct. 19, 1977). On appeal by the Department of Health, we affirm.

Under Department of Health regulations operative during the period in question, the "governing authority" of a hospital discontinuing operations is required to maintain, store and service its adult patients' medical records for at least six years,[1] and its infant patients' records for at least six years beyond the patients' majority.[2] The State contends that 10 N.Y.C.R.R. § 720.20(q), *see* note 1 *supra,* authorizes the Department of Health to require a trustee in bankruptcy to maintain these records, and that this regulation is a proper exercise of the State's police power.[3] *See Munn v. Illinois,* 94 U.S. 113, 24 L.Ed. 77 (1876). It further argues,

---

1. 10 N.Y.C.R.R. § 720.20(q), which was in effect when the case was heard by Judge Costa, reads as follows:

   In the event that a hospital discontinues for any reason whatsoever, the *governing authority* shall maintain, store and service in the city in which the hospital is located all medical records for a period of not less than six years. The governing authority shall notify the department in writing where the medical records will be stored and serviced. [Emphasis added.]

   On July 1, 1976, the regulation was supplanted by 10 N.Y.C.R.R. § 401.3(h) which states:

   No medical facility shall discontinue operation or surrender its operating certificate whether voluntarily or pursuant to judicial or administrative proceedings without first obtaining the commissioner's written approval of a plan for the maintenance, storage and safekeeping of its patients' medical records. The plan shall provide adequate safeguards for these records, make them accessible to the patients and their physicians, and may provide for their ultimate disposition.

   We are advised by the State that "although the text of the new regulation differs from the original, there is no change in practice." Letter from Louis J. Lefkowitz to Second Circuit Court of Appeals panel (Apr. 6, 1978). We proceed, however, on the basis that resolution of the case before us hinges on an analysis of § 720.20(q) because it controlled the duties of the responsible hospital administrators both at

the time the hospital discontinued operations and at the time of the bankruptcy proceedings below.

2. 10 N.Y.C.R.R. § 720.20(1) (currently repealed). A complete set of the regulations as they existed prior to July 1, 1976, is apparently not available as such. At least the Assistant Attorney General of the State of New York has not been able to furnish us with these materials, though he sought to furnish us with materials he thought relevant and evidently believes them incorporated in a three-volume set of loose-leaf materials. A totally comprehensive review of the entire regulatory scheme in question is therefore foreclosed, but we are satisfied that we have sufficient material on which to base a sound decision.

3. Because the State is convinced of the rectitude of its position, in the three years since this issue was first raised in the bankruptcy court, the Department of Health has done nothing to promote legislation or regulations which would, like the Education Department's solution to the problem, permit the filing of defunct institutions' records with the department itself. N.Y.Educ. Law § 219(4) (McKinney 1969) provides:

   Whenever the charter or incorporation of an institution is revoked or an order of dissolution made pursuant to the provisions of this section, it shall be the duty of the trustees and/or the custodians of the permanent

relying on *Otte v. United States,* 419 U.S. 43, 57, 95 S.Ct. 247, 42 L.Ed.2d 212 (1974), that expenditures necessarily incurred are expenses of administration, permitted by Sections 62(a)(1) and 64 of the Bankruptcy Act, 11 U.S.C. §§ 102(a)(1), 104.

■ We agree with the courts below that the Department of Health lacks authority to impose this recordkeeping burden on the trustee in bankruptcy because he is not a "governing authority" within the meaning of the applicable regulations. Accordingly, he is not subject to the dictates of 10 N.Y.C. R.R. § 720.20(q).

■ 10 N.Y.C.R.R. § 600.9 provides:

(a) The governing authority or operator is the party responsible for the operation of a medical facility.

(b) The governing authority or operator shall mean:

(1) the policy making body of a government agency;

(2) the board of directors or trustees of a not-for-profit corporation;

(3) the officers, directors and stockholders of a business corporation; and

(4) the proprietor or proprietors of a proprietary medical facility.[4]

Since the bankrupt is a not-for-profit corporation, its board of directors or trustees ostensibly constitute its "governing authority." A trustee in bankruptcy is neither a director nor a trustee of a corporation; thus he does not fall within the literal terms of the regulation. More importantly, the definition expressly contemplates individuals responsible for "the operation" of a hospital. Obviously, those with responsibility for the general operating policies of an ongoing facility are intended. The trustee in bankruptcy never assumed such duties, for the hospital ceased operations some six months before he was even appointed.[5] His purpose and function, being antithetical to the

---

academic records of such institution to file the same with the state education department, or with such other agency as may be approved by said department where they shall be kept available for future reference. In the event, however, that an application is made to the supreme court for an order directing the disposition of assets of such educational corporation pursuant to the provisions of section two hundred twenty of this chapter and such order is thereupon made, the disposition of such permanent academic records may be directed therein. A copy of the order shall be filed with the education department by the applicant and such order shall so provide.

Regulations also authorizing neighboring hospitals to assume the storage and administration of such records seemingly could be promulgated under N.Y. Pub. Health Law § 2803(2) (McKinney 1977). To be valid, provision for compensation to the storing hospital might be necessary. Perhaps the records could be housed with the State Bureau of Records Management, in the Office of General Services. *See* 9 N.Y.C.R.R. Part 295.

**4.** Although not cited by the parties, this provision, which applies to the establishment of hospitals, apparently was in force during all of the proceedings below and so remains. A similar definition currently exists in the portion of the regulatory scheme governing minimum standards of hospitals. This regulation provides:

"*Governing authority or operator* shall mean the policy-making body of a government agency, the board of directors or trustees of a corporation or the proprietor or proprietors of a proprietary medical facility to which the department has issued an operating certificate." 10 N.Y.C.R.R. § 405.2(c) (emphasis in original).

**5.** It does not appear that there is any "governing authority" in existence at this juncture. The person who operated the hospital, Mrs. Marcus, is incapacitated and institutionalized. The original board of trustees, upon executing a Chapter XI petition, was immediately replaced by a board appointed by the bankruptcy court. The new board, organized for the sole purpose of devising a reorganization plan, has at no time operated the hospital. In fact, the hospital's physical plant, equipment and supplies were sold to two individuals who apparently have been keeping the records at a charge to the bankrupt estate pending resolution of this case. Thus, for all practical purposes there is no board of trustees currently responsible for operating the hospital *qua* hospital. And it would seem logical that any obligation of the old board to maintain the records vanished upon the bankruptcy court's replacement order. Such questions are beyond the scope of this appeal, however, since the sole issue presented is whether the courts below correctly granted the application of the trustee in bankruptcy to abandon the records.

concept of a "governing authority,"[6] preclude his characterization as such.[7]

Finally, we emphasize that the broad construction urged by the State would not inure to its benefit. It is beyond peradventure that federal law prevails over inconsistent state laws. U.S.Const. art. VI, cl. 2; *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824). This fundamental principle of American jurisprudence of course encompasses the bankruptcy laws. U.S.Const. art. I, § 8, cl. 4; *see, e. g., International Shoe Co. v. Pinkus,* 278 U.S. 261, 263–65, 49 S.Ct. 108, 73 L.Ed. 318 (1929). And under federal law, abandonment in this case is clearly permissible.[8] *See In re Chicago Rapid Transit Co.,* 129 F.2d 1, 4–5 (7th Cir.) *cert. denied,* 317 U.S. 683, 63 S.Ct. 205, 87 L.Ed. 547 (1942).

The paramount purpose of bankruptcy liquidation and administration is the reduction of a bankrupt's property to money as expeditiously as practicable, so as to secure funds for distribution to general creditors. Hence the trustee in examining the various assets with regard to their potential value when converted into money for distribution to creditors is from the outset faced with the managerial duty to concentrate on property of possible benefit to the estate and to eliminate property that will be either valueless or unprofitable in its administration. . . . The trustee . . . may abandon any property which is either worthless, or overburdened, or for any other reason certain not to yield any benefit to the general estate.[9]

6. While the trustee may be spoken of as a kind of statutory "heir" to the bankrupt, it is evident that there would be little left for him to do but swiftly to renounce his heritage if he had not also been vested with a power to discriminate and select, with a view to ridding himself of all those assets that either contribute nothing toward the satisfaction of general creditors or, if retained, are even apt to consume the little that may be left. 4A *Collier on Bankruptcy* ' 70.27, at 500 (14th ed. 1976). That a trustee in bankruptcy is in no sense a manager of an institution's operations was also relied on below: "[He] is nothing more than a fiduciary of the Bankruptcy Court charged with examination of the acts and conduct of the bankrupt, and the liquidation and distribution of assets in such a way as to realize the greatest pecuniary [benefit] to creditors." *In re Adelphi Hospital Corp., supra,* No. 74B617, at 9.

7. The State brief refers us to a statutory definition of "governing body," apparently because its coverage extends beyond directors and trustees, and argues that the phrase is synonymous with "governing authority." N.Y. Pub. Health Law § 206 a(11)(a) (McKinney 1971) provides:

"Governing body" means the group or the individual ultimately responsible for a hospital's general policies with respect to staff membership and professional privileges and shall include, but not [be] limited to, a board of trustees, a board of directors, a board of governors, a board of managers, a medical board, a director or any other official of a hospital with comparable responsibilities.

Section 206 a, however, merely proscribes unlawful discriminatory practices and does not purport to be of general applicability. Apply-

ing its accompanying definitions beyond its contours, therefore, would be out of the question. Moreover, equating "governing body" with "governing authority" would not aid the State. A trustee in bankruptcy cannot be "ultimately responsible for a hospital's general policies" when the facility no longer functions. This reasoning similarly precludes reliance on 10 N.Y.C.R.R. § 405.1021, which states:

Governing body. The hospital has an effective governing body legally responsible for the *conduct of the hospital as an institution.* However, if a hospital does not have an organized governing body, the persons legally responsible for the conduct of the hospital carry out the functions in this section pertaining to the governing body. [Emphasis added.]

8. Abandonment would serve to revest title to the records in the bankrupt, 4A *Collier on Bankruptcy, supra* note 6, ' 70.42, at 512–14. What significance this would have in determining whether there is a "governing authority" upon which to impose the obligation to preserve records is a question not before us. *See* note 5 *supra.*

9. The bankruptcy court made a finding "of fact and of law" that title did not pass to the trustee under Section 70 a(1) of the Act, 11 U.S.C. § 110(a)(1), since the property does not "deal with the business of the bankrupt" or "enhance the value of the physical assets marshaled and sold." *In re Adelphi Hospital Corp., supra,* No. 74B617, at 12. The State does not dispute this finding, nor does it affect the outcome of this appeal. However, we believe that patient record maintenance is clearly a part of the "business" of a hospital. Furthermore, the fact that

4A *Collier on Bankruptcy* ¶ 70.42, at 502 (14th ed. 1976) (footnotes omitted).

The State and the public obviously have a vital interest in the preservation of the bankrupt's hospital records. Yet as both the bankruptcy judge and Judge Pratt pointed out, the State has done nothing to foster this policy other than rather intransigently to pursue this litigation. *See* note 3 *supra.* We offer the State a final opportunity to do so by staying our mandate for ninety days from the date of the filing of this opinion.

Judgment affirmed.

a trustee is empowered to *abandon* worthless property refutes the notion that such property does not pass to a trustee. *See* 4A *Collier on Bankruptcy, supra* note 6, ¶ 70.42, at 500–01.