**In the Matter of IDH REALTY INC., Debtor.**

**Dorothy EISENBERG, Trustee of the Estate of IDH Realty Inc., Plaintiff,**

v.

**The INCORPORATED VILLAGE OF MINEOLA, Board of Trustees, Mayor Edward S. Smith, Isidore Irace, Angelo Plata, Robert Hick, and Anthony Bellisimo, Members of the Board of Trustees, Defendants.**

**Bankruptcy No. 881–80296–17.
A.P. No. 881–0817–17.**

United States Bankruptcy Court,
E. D. New York.

Dec. 3, 1981.

Dorothy Eisenberg, Garden City, trustee.

Shaw, Goldman, Licitra, Levine & Weinberg, Garden City, by Karen Carter, Garden City, for trustee.

Murphy & Bartol, Garden City, by Ernest T. Bartol and Gerald J. Fenter, Garden City, for defendants.

## MEMORANDUM AND ORDER

BORIS RADOYEVICH, Bankruptcy Judge.

By complaint filed October 21, 1981, Dorothy Eisenberg as trustee of the estate of IDH Realty, Inc., (hereinafter "IDH"), seeks declaratory judgment which would define the zoning status of its premises located at 126 Jericho Turnpike, Mineola, New York (hereinafter "the premises") and a mandatory injunction setting aside any denial of said status. The defendants in their answer filed November 12, 1981 deny the allegation that their actions have abridged any of the debtor's rights and call upon the court to deny plaintiff's prayer for injunctive relief. At trial dated November 12, 1981, in open court the parties stipulated that no triable issue of fact existed. Accordingly, the proceeding will be considered solely as a matter of law.

### Memorandum

On April 10, 1969 IDH purchased an assignment of a leasehold interest in the involved premises. As authorized by a permit issued by the Incorporated Village of Mineola (hereinafter "the village") on November 5, 1969, IDH constructed and operated a fast food restaurant. At the time this permit was issued such a restaurant was permitted use under it's B–1 zoning district classification.

On September 29, 1976, the village amended section 60–62(A) of the Village Code, thereby changing restaurant operation from a permitted to a conditional B–1 use. As a consequence IDH's restaurant operation became a non-conforming use.

Section 60–63 of the Village Code provides that the cessation of operation of a nonconforming use for a period greater than six months is deemed an abandonment of the right to operate such non-conforming use. Any subsequent nonconforming use can only be maintained by application for, and issuance of, a village "special exception permit."

IDH ceased its nonconforming restaurant use when it closed in November of 1980. Only two months had run on the six month grace period when the debtor filed its chapter 7 petition on January 29, 1981. Some 13 months after IDH ceased restaurant operation, the trustee now seeks to liquidate the

debtor's assets. The principal asset being the interest held in the premises. The village contends that the premises have been abandoned for greater than six months, therefore forfeiting the nonconforming use status. The trustee asserts that the automatic stay protections in 11 U.S.C. section 362 tolled the six month period and stayed any zoning regulation enforcement. As there is a considerable market value differential between the premises as classified as an existing nonconforming use, or as an unpermitted use subject to the possibility of special exception, it becomes necessary to decide the property's zoning status before it can be sold. The central issue to resolving this question involves the effect of the automatic stay on the right of a municipality to enforce its zoning ordinances.

The stay imposed by 11 U.S.C. section 362 is applicable to all entities and prevents the

> commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor . . .

The village concedes that the administrative process was allowed to run during the pendancy of the stay. However, the village asserts such action is allowable as 11 U.S.C. section 362(b)(4) specifically exempts "commencement or continuation of an action or proceeding by a government unit to enforce a police or regulatory power."

The village has incorrectly given their exemption status a broader interpretation than that intended by Congress. It is expressed in the legislative history that "section 362(b)(4) is intended to be given a narrow construction in order to permit governmental units to pursue and protect health and safety . . ." 124 Congressional Record H 11089, 11 U.S. Code Congressional Administrative News 660–61 (December 1978). The Second Circuit has adopted this narrow interpretation as to the scope of the section 362(b)(4) stay exemption, and has affirmed "that congress did not adopt the total hands-off approach toward local regulation." *In the Matter of National Hosp. & Builders Co. v. Philip Goldstein, N. Y. C. Dept. of Buildings and N. Y. C. Board of* *Standards and Appeals*, 658 F.2d 39, 8 B.C.D. 236 (2 Cir., 1981).

The section 362(b)(4) governmental activities exemption has been interpreted as being limited solely to the "enforcement" of police or regulatory law. *Barber, Inc. v. NLRB*, 9 B.C.D. 188 (N.D.Tex.1981). This literal construction has expressly declined to classify as exempt, proceedings or events which occur prior to accrual of a municipal right of action. There must exist a derogation of the local law at the time of a bankrupt's filing before a municipality can proceed to enforce its zoning statutes in the face of the stay. *In re Cousins Rest. Inc.*, 11 B.R. 521, 8 B.C.D. 15 (Bkrtcy.W.D. N.Y.1981). In the case at bar only two months on the abandonment period had run by the date of the debtor's filing. At that point, the village had no enforceable rights against the debtor. The running of the abandonment period for four more months was the necessary contingent event to the creation of such a right. Accordingly, the post filing administrative reclassification is not an act of enforcement, and is subject to the stay.

Case law under the new code has further narrowed the (b)(4) exemption to only those exercises of the police powers which are "urgently" needed to protect the public health and welfare. *King Memorial Hospital Inc. v. Dept. of Health and Services, State of Florida*, 4 B.R. 704, 6 B.C.D. 634 (Bkrtcy.1980). Under this interpretation hospital licensing regulation was deemed not to involve sufficient urgency. In light of the conceded facts that IDH had been operating on the premises in a fast food capacity since 1969, and that a similar fast food establishment is situated across the street from the premises, there is little merit to the argument that the running of the abandonment period, and accompanying enforcement of the village zoning statute will work to protect the public health and welfare from urgent harm. This is precisely the sort of government activity which Congress intended to stay, pending an application to this court to balance the parties competing interests.

IDH position is further supported by the fact that even if the argument for enforcement of the zoning statutes could be stretched to qualify as urgent protection of the public welfare, the municipal exemption is inapplicable if the proceeding would result in the taking of property from the estate. *Colonial Tavern, Inc. v. Byrne,* 420 F.Supp. 44 (D.Mass.1976); *See also* 11 U.S.C. section 362a(3), b(4); COLLIER ON BANKRUPTCY ¶ 362.05(4) (15th ed. 1980). As all the property of IDH including statutory zoning rights are part of the estate, the loss of those rights without a prior hearing before this Court would effectuate an improper taking from the debtor's estate. 11 U.S.C. section 541; *R. S. Pinellas Motel Partnership v. Ramada Inns Inc.,* 2 B.R. 113, 5 B.C.D. 1292 (Bkrtcy.M.D.Fla. 1979).

While this Court has the authority under 11 U.S.C. section 105 to enjoin any inequitable actions taken against property of the estate, it is not necessary in this case as the automatic stay provisions of section 362 already provide appropriate relief to the trustee.

Settle Judgment in accordance herewith.