In the Matter of SCOTT HOUSING
SYSTEMS, INC. (Chapter 7 Case
586–00123), Debtor.

James D. WALKER, Jr.,
Trustee, Plaintiff,

v.

MAURY COUNTY, Defendant.

Adv. No. 587–0025.

United States Bankruptcy Court,
S.D. Georgia,
Waycross Division.

July 22, 1988.

James D. Walker, Jr., Augusta, Ga., for plaintiff.

Dennis J. Meaker & William M. Leech, Jr., Columbia, Tenn., Lawton Jordan, Jr., Hull, Towill, Norman & Barrett, Augusta, Ga., of counsel, for defendant.

## MEMORANDUM AND ORDER

LAMAR W. DAVIS, Jr., Bankruptcy Judge.

The Defendant, Maury County, filed three separate motions in response to the Trustee's Complaint for Declaratory Judgment. On November 25, 1987, the Honorable Herman W. Coolidge denied the Defendant's Motion for Partial Summary Judgment and Ordered that 11 U.S.C. Section 362 tolled the running of the Maury County Zoning Resolution until further order of this Court. Judge Coolidge made no

ruling on the Defendant's Motion to Abstain or on the Defendant's Motion to Stay Discovery. For reasons set forth herein, the Defendant's Motion to Abstain is denied and the Defendant's Motion to Stay Discovery is moot. In addition to these three Motions, the Defendant has also filed a Motion to Reconsider the November 25, 1987, Order Denying Motion for Partial Summary Judgment. For reasons set forth herein, the Defendant's Motion to Reconsider is Denied.

The Plaintiff, James D. Walker, Jr., Trustee, ("Trustee") filed a Motion for Summary Judgment and an Amended Motion for Summary Judgment. These Motions came on for hearing on March 29, 1988, wherein counsel for the Plaintiff and counsel for the Defendant presented oral arguments.

After consideration of the Plaintiff's Motion and Defendant's Response, their respective affidavits, oral arguments and briefs, I make the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

The Findings of Fact set forth in the November 25, 1987, Order of this Court are expressly adopted and restated herein as follows:

The Debtor owns property in Maury County, Tennessee ("the property") and, before filing its petition in bankruptcy, had used the property to conduct the business of manufacturing mobile homes. At the time the Debtor commenced its manufacturing operations, Maury County had no zoning ordinances. In April, 1986, Maury County adopted zoning ordinances. The property was zoned Rural A–2 and the mobile home operations of Debtor continued as a non-conforming use, subject to a provision which provided that the right to engage in the non-conforming use would terminate if the use was discontinued for a period of six months.

The Debtor filed its Chapter 11 petition on August 25, 1986, and continued its operations until December, 1986. Since that time, the Debtor has used its facility primarily for storage of machinery, equipment, inventory and vehicles.

On April 8, 1987, the case was converted to one under Chapter 7 of the Code, and James D. Walker, Jr., was appointed as Trustee. In an effort to liquidate this asset of the estate, the Trustee scheduled a public auction of both the real and personal property on August 27, 1987, but only conducted a sale of the personalty when Maury County officials took the position that the property was now zoned Rural A–2.

## CONCLUSIONS OF LAW

The questions presented by this case are two-fold. First, does the automatic stay toll the running of the six month "discontinuance" period under the local zoning resolution,[1] after which the right to engage in a non-conforming use is lost? Second, if the automatic stay does not toll the six-month period, did the debtor and/or trustee "discontinue" the non-conforming use for a period of six months?

The state law non-conforming use question—whether the storage of equipment, inventory and vehicles on the site of the property in question constitutes a continued non-conforming use—was raised in the Plaintiff's Motion and Amended Motion for Summary Judgment. At the March 29, 1988 hearing, however, the focus was on the issue of whether the automatic stay operated to toll the six month period rather than whether the non-conforming use had been discontinued. Although this issue was not formally raised in the Plaintiff's Motion for Summary Judgment, it was raised without objection and argued at length by both the Plaintiff and the Defendant at the hearing. Under Bankruptcy Rule 7015 [Fed.R.Civ.P. 15(b)], the matter was placed before me by the express or

1. The zoning resolution of Maury County adopted April 21, 1986, provides in Section 7.020 in relevant part that: "Lawful non-conforming uses ... shall be allowed to remain subject to the following provision: When a non-conforming use of any structure or land ... has been discontinued for a period of six (6) months, it shall not be reestablished or changed to any use not in conformity with the provisions of this resolution."

implied consent of the litigants. It is clear that a resolution of the federal stay question is at the heart of the instant controversy, and its determination is in turn critical in determining whether the state law question need be addressed.

■ As an initial matter, the Defendant's Motion to Reconsider Judge Coolidge's prior order is addressed. The Defendant contends that partial summary judgment should be granted in its favor because the Court found that Maury County violated neither 11 U.S.C. Section 362(a)(1) nor 362(a)(3). In essence, the Defendant asserts that this finding as to the lack of liability establishes that there are no material facts in dispute and, therefore, entitles the Defendant to summary judgment as a matter of law. Whatever the merits may be of the Defendant's Motion to Reconsider, they will not be considered at this time because the Defendant's Motion is untimely. Bankruptcy Rule 9023 adopts Rule 59 of the Federal Rules of Civil Procedure, which requires that:

"a motion to alter or amend the judgment shall be served not later than ten (10) days after the entry of the judgment."

Fed.R.Civ.P. 59(e). This Court's judgment was entered on November 25, 1987, and it was not until March 8, 1988, over three months after the entry of this Court's order, that the Defendant served its Motion to Reconsider. Accordingly, the Defendant's Motion to Reconsider is denied.

In the November 25, 1987, Order, Judge Coolidge found that the County had undertaken no action to obtain possession or exercise control over the property of the estate. The Court did not find, however, that a future attempt to enforce the zoning ordinances by the County would not violate 11 U.S.C. Section 362(a)(3). Moreover, the November 25, 1987, Order did not dispositively resolve the issue of whether the automatic stay operates to toll the running of the six month period.

The Plaintiff contends that the reach of the automatic stay is sufficiently broad under Sections 362(a)(1) and (a)(3) to toll the six-month period. It is axiomatic that the automatic stay is "... one of the fundamental debtor protections provided by the bankruptcy laws. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or organization plan or simply to be relieved of the financial pressures that drove him into bankruptcy." H.R. Rep. No. 95–595, 95th Cong., 2nd Sess. 340 (1978), Reprinted in 1978, U.S. Code Cong. and Admin. News, 5787, 5963, 6297–98.

Although the reach of the stay is broad, it is not all encompassing. Under 11 U.S.C. Section 362(b)(4) "... the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power" is excepted from the broad reach of the automatic stay. The legislative history and case law, however, make it clear that the (b)(4) exception is to be construed narrowly.[2]

■ An analysis of 11 U.S.C. Section 362(a)(1) and the (b)(4) exception demands a finding that neither (a)(1) nor (b)(4) operate

---

2. The statement of the drafters of the Code indicate that: "This section [362(b)(4)] is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate." 124 Cong.Rec. H11089, Reprinted in U.S.Code Cong. and Admin.News 6436, 6444–45 (1978). Some courts have further narrowed the (b)(4) exception to only those situations where there is an urgent public necessity or where there is an imminent and identifiable harm to public health and welfare. See In re Island Club Marina, Ltd.,

38 B.R. 847, 854 (Bankr.E.D.N.Y.1981); Matter of IDH Realty, Inc., 16 B.R. 55, 57 (Bankr.E.D.N.Y.1981); In re King Memorial Hospital, Inc., 4 B.R. 704, 708 (Bankr.S.D.Fla.1980). The judicial engrafting of an "imminent and identifiable harm" or "urgent public necessity" requirement on the (b)(4) exception has been roundly criticized. See Matter of Commonwealth Oil Refining Company, 805 F.2d 1175, 1184 (5th Cir. 1986). But cf.: Midtlantic National Bank v. New Jersey Department of Environmental Protection, 474 U.S. 494, 106 S.Ct. 755, 766, 88 L.Ed.2d 859 (1986) (The Court found "an imminent and identifiable harm to the public health or safety" exception to the abandonment powers vested in the trustee under 11 U.S.C. § 554).

to control the instant case. 11 U.S.C. Section 362(b)(4) provides that:

"The filing of a petition ... does not operate as a stay—(4) *under subsection (a)(1)* of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;" (Emphasis added)

Therefore, the (b)(4) exception relates only to actions that are stayed under (a)(1). That subsection, in turn, operates only to stay:

"The commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor *that was or could have been commenced before the commencement of the case* ... or to recover a claim against a debtor *that arose before the commencement of the case* ..." (Emphasis added)

The evidence is clear that as of August 25, 1986, the date the Debtor filed its Chapter 11 petition, the Debtor was engaged in continuing operations and did not cease manufacturing until December, 1986 at the earliest. Because the Debtor did not cease operations until after the Chapter 11 case was filed, the six month discontinuance period could not have begun to run until after the petition was filed. As such, there was no "action or proceeding against the Debtor that was or could have been commenced before the commencement of the case". It is clear, therefore, that no stay exists under 11 U.S.C. Section 362(a)(1) which would toll the six-month period or preclude the County from enforcing its zoning ordinance because *at the time the petition was filed* the County had no judicial, administrative or other right of action upon which it could have moved against the Debtor. Whatever right of action the County may have against the Debtor arose, if at all, during the post-petition period. It should be equally clear that the (b)(4) exception is not triggered in the absence of a Section 362(a)(1) stay.

█ Because Section 362(a)(1) does not operate as a stay in this case, it is necessary to examine other provisions of 11 U.S.

C. Section 362 to determine whether the automatic stay tolls the running of the six month period. Section 362(a)(3) operates to stay "any act ... to exercise control over property of the estate". Property of the estate is determined at the time the petition is filed. 11 U.S.C. § 541. The reach of Section 541 is broad and includes all legal and equitable interests of the Debtor in property. *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed. 2d 515 (1983). Statutory zoning rights which exist at the time the petition is filed are included as property of the estate and may be protected under 11 U.S.C. Section 362(a)(3). *Matter of IDH Realty, Inc.,* 16 B.R. 55, 58 (Bankr.E.D.N.Y.1981). Also see: *Bernstein v. B.C. Williams Inc.,* 47 B.R. 1020 (D.Colo.1985) (Certificate of public convenience and necessity is property of the estate and consideration of post-petition non-use in determining whether the certificate is dormant is stayed by 11 U.S.C. Section 362(a)(3) as an act to obtain property of the estate); *Matter of R.S. Pinellas Motel Partnership,* 2 B.R. 113, 118 (Bankr. M.D.Fla.1979) ("Intangible property rights, e.g. rights acquired under a license agreement are properties of the estate ... an attempt to cancel such rights, after the commencement of the case may come within the protective provisions of the Code under subclause (a)(3) of Section 362").

The legislative history of Section 362(a)(3) makes it clear that:

"The purpose of this provision is to prevent dismemberment of the estate. Liquidation must proceed in an orderly fashion. Any distribution of property must be by the trustee *after he has had an opportunity to familiarize himself with the various rights and interests involved and with the property available for distribution.*" (Emphasis added)

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 341 (1977); S.Rep. No. 95–989, 95th Cong., 2nd Sess. 50 (1978), U.S.Code Cong. & Admin.News 1978, 5836, 6298. The assertion or enforcement of a zoning classification change due to the passage of time, which carries the potential of adversely affecting the marketability and value of the land is clearly an act which limits or regulates the

debtor's use of its land in a particular manner and thus constitutes an "act ... to exercise control over property of the estate". I therefore conclude that the effect of Section 362(a)(3) is to toll the six month discontinuance period, which would otherwise run and unduly compromise the Trustee's opportunity to familiarize himself with and administer the assets of the estate at the maximum possible price. This result is manifestly consistent with the statutory language, the legislative intent—that the Trustee be given an opportunity to familiarize himself with the various rights and interests in property—and with the underlying fundamental protection which the automatic stay provides the debtor—a breathing spell in which he can attempt to reorganize or orderly liquidate his affairs. Only after relief from stay is granted under Section 362(d) will the six month period run.

■ The County argues that under 28 U.S.C. Section 959(b), the Trustee and the debtor-in-possession who preceded him are required to:

"Manage and operate the property in his possession ... according to the requirements of the valid laws of the state in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof."

28 U.S.C. Section 959(b). In support of its position, the County cites *Midlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) for the proposition that "the filing of a bankruptcy petition does not create a zone around the property of the estate which is immune from state regulation." Defendant's Memorandum in support of its Motion for Partial Summary Judgment at p. 3. An analysis of *Midlantic* reveals that the court only drew an analogy between its holding and Section 959 but did not base its decision on it:

"Even though § 959(b) does not *directly* apply to an abandonment under § 554(a) of the Bankruptcy Code ... the section [§ 959(b)] nevertheless supports our conclusion that Congress did intend for the

Bankruptcy Code to pre-empt all state laws that otherwise constrain the exercise of a trustee's powers."

*Id.* 106 S.Ct. at 762. (Emphasis added). The Court did not analyze or apply Section 959(b) further, except to the extent that it stated that "the petitioners have contended that § 959(b) is relevant only when the trustee is actually operating the business of the debtor, and not when he is liquidating it". *Id.* at 761. The Court neither endorsed nor rejected the petitioner's contention. But see: *In re Security Gas & Oil, Inc.*, 70 B.R. 786, 796 (Bankr.N.D.Cal. 1987) (Citing *Midlantic* in support of the proposition that § 959(b) does not govern where the debtor's business ceased all operations). In the dissenting opinion, Justice Rehnquist does, however, find that

"... a trustee's filing of a petition to abandon, as opposed to continued operation of a site pending a decision to abandon, does not constitute 'manage[ment]' or 'opera[tion]' under [§ 959(b)] ... a contrary reading [would] strain the language of § 959(b), cf. *In re Adelphi Hospital Corp.*, 579 F.2d 726, 729, n. 6 (CA2 1978) (per curiam) (in pre-Code liquidation proceeding trustee "is in no sense a manager of an institution's operations)."

*Id.* at 766. Justice Rehnquist's citation of *Adelphi Hospital* lends support to the proposition that Section 959(b) does not apply to a liquidation. Further support is found in *Matter of Borne Chemical Company, Inc.*, 54 B.R. 126, 135 (Bankr.D.N.J. 1984) in which the Court found no case law applying Section 959(b) to situations where the receiver, trustee or debtor-in-possession was closing down operations, and concluded that "Section 959(b) is applicable only where the property is being managed or operated for the purpose of continuing operations."

The conclusion reached in *Borne Chemical Company*, has a certain appeal and appears consistent with the statutory language of Section 959(b) which requires that a trustee, receiver, or manager, including a debtor-in-possession "shall *manage and operate* the property ... according to the

requirements of the valid laws of the state in which such property is situated ..." (emphasis added). The "manage and operate" language of Section 959(b) when read in conjunction with Section 959(a), which provides in relevant part that: "Trustees, receivers or managers of any property, including debtors in possession, may be sued ... with respect to any of their acts or transactions *in carrying on business* connected with such property" (emphasis added), evidences a statutory intent that Section 959 applies when the business is being operated, not when its operations have ceased and its assets are being liquidated.

In interpreting "carrying on business" the eminent jurist Learned Hand held in *Vass v. Conron Bros. Co.*, 59 F.2d 969 (2nd Cir.1932) that mere administration and liquidation is not carrying on the business as contemplated by 28 U.S.C. Section 125, the predecessor to 28 U.S.C. Section 959. Justice Hand stated: "Merely to hold matters in the status quo; to mark time, as it were; to do only what is necessary to hold the assets intact; such activities are not a continuance of the business." *Id.* at 971. See also: *Austrian v. Williams*, 216 F.2d 278, 285 (2nd Cir.1954) ("Merely to attempt to collect and liquidate the assets of a debtor is not to carry on its business in any proper sense of the term"); *Field v. Kansas City Refining Co.*, 9 F.2d 213, 216 (8th Cir. 1925), cert. den., 271 U.S. 676, 46 S.Ct. 489, 70 L.Ed. 1146 (1925) ("Mere continuous administration of property under order of court does not constitute an 'act' or 'transaction' on part of the receiver"); *In re Kalb & Berger Mfg.*, 165 F. 895 (2nd Cir. 1908) (The mere arrangement for storage of machinery by receiver is not an act or transaction in carrying on the business).

In excepting a liquidation from the reach of Section 959(b), I am aware of the Sixth Circuit's decision in *In re Wall Tube & Metal Products Co.*, 56 B.R. 918 (Bankr.E. D.Tenn.1986), rev'd, 831 F.2d 118 (6th Cir. 1987). While the Sixth Circuit did frame the issue before it in terms of whether "28 U.S.C. § 959(b) requires the Chapter 7 liquidating trustee ... to comply with the State's hazardous waste statute", *Id.* at 121, its holding, however, was predicated

on an analysis of *Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985) and *Midlantic*, not 28 U.S.C. § 959(b). Under the rule of law set forth in *Midlantic* and *Kovacs*, there can be no doubt that the debtor-in-possession or trustee, liquidating or otherwise, "must comply with the environmental laws of the state", *Kovacs*, 105 S.Ct. at 711, and "may not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards." *Midlantic*, 106 S.Ct. at 762. It must be emphasized, however, that neither the *Kovacs* or *Midlantic* decisions, analyzed, applied or predicated their holdings on 28 U.S.C. Section 959(a) or (b). There is no mention of Section 959(a) or (b) in *Kovacs*, and in *Midlantic* the Court cited Section 959(b) for the limited proposition that it "supports our conclusion that Congress did not intend for the Bankruptcy Code to pre-empt all state laws that otherwise constrain the exercise of a trustee's powers". *Id.* Neither the United States Supreme Court nor the Sixth Circuit analyzed the statutory language of or case law construing Section 959(b). I further distinguish *Wall Tube* because it dealt with the issue of hazardous waste clean up costs which more clearly come within the scope of Section 362(b)(4) under the "urgent public necessity" rationale. (Footnote 2 at page 193, *supra*.)

In reaching this conclusion, I do not suggest that a debtor-in-possession or trustee who is liquidating the assets of the estate may operate carte blanche. Clearly, their actions are constrained by "state statute[s] or regulation[s] that [are] reasonably designed to protect the public health or safety from *identified* hazards". *Midlantic* at 762. (emphasis added). Identified hazards are narrowly construed as "imminent and identifiable harm". *Id.* n. 9. The public interest to be protected here is, however, not in such a category.

Furthermore, implicit in *Midlantic's* recognition that "Congress did not intend for the Bankruptcy Code to pre-empt *all* state laws", *Id.* at 762 (emphasis added), is that Congress did intend the Bankruptcy Code

to pre-empt some state laws. The automatic stay of 11 U.S.C. Section 362 is one of the fundamental protections of the Bankruptcy Code—it gives the debtor a breathing spell to reorganize or liquidate and the trustee an opportunity to familiarize himself with the property available for distribution. The automatic stay is broad and pre-empts state law, subject to the exceptions listed in Section 362(b) none of which are applicable here.

 The only additional matters which have not been formally addressed by order of this Court are the County's pending Motion to Abstain and Motion to Stay Discovery. Addressing the later first, it is clear that the determination made herein on the Plaintiff's Motion for Summary Judgment renders the Defendant's Motion to Stay Discovery moot. In support of its Motion to Abstain the Defendant had cited authority for the proposition that abstention is appropriate when a case presents an issue that is essentially one of state law and involves parties who otherwise have no interest in the estate. Contrary to the Defendant's position, this case presents an issue that is essentially one of federal law, not state law. Although the County is a party in interest and arguably has no interest in the estate, the Debtor and creditors in the case have a substantial interest in the outcome of this case. 28 U.S.C. Section 1334(c)(1) grants discretion as to whether I should abstain "in the interest of justice, or in the interest of comity with state courts or respect for state law." In the exercise

of the discretion vested in me I decline to abstain because the interest of the estate and the parties are best served by an adjudication of the federal bankruptcy issues in the Bankruptcy Court. Notwithstanding the Defendant's assertions to the contrary, the issue which was presented to this Court and resolved herein is not an issue involving unsettled questions of state property law.[3]

## ORDER

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that:

1) The Defendant's Motion to Reconsider is denied;

2) The Defendant's Motion to Abstain is denied;

3) The Defendant's Motion to Stay Discovery is moot; and

4) The Plaintiff's Motion for Summary Judgment is granted. The zoning classification and right to engage in a non-conforming use on Debtor's property are hereby declared not to have changed from that which existed on the date of the filing of this case.

---

**3.** The result might be different were I to hold that the six month period was not tolled. In that event the question of whether Debtor had

"discontinued" its non-conforming use might well be a matter that should be decided in a state forum.