**In re VALLEY STEEL PRODUCTS COMPANY, INC., Debtor.**

**MISSOURI DEPARTMENT OF NATURAL RESOURCES, Plaintiff,**

v.

**VALLEY STEEL PRODUCTS COMPANY, INC. and Official Unsecured Creditors Committee of Valley Steel Products Company, Defendants.**

**Bankruptcy No. 92–40778–293. Adv. No. 92–4377.**

United States Bankruptcy Court, E.D. Missouri, E.D.

June 16, 1993.

Peter D. Kerth and David J. Harris, Gallop, Johnson & Neuman, Clayton, MO, for Valley Steel.

Douglas E. Nelson, Asst. Atty. Gen., Jefferson City, MO.

Norman W. Pressman and Robert E. Eggmann, Greensfelder, Hemker & Gale, St. Louis, MO, for Creditors' Committee.

Office of the U.S. Trustee, St. Louis, MO.

### MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A) and (O), which the Court may hear and determine.

### PROCEDURAL BACKGROUND

1. Missouri Department of Natural Resources ("MDNR") filed an adversary complaint against the Debtor ("Valley") on September 11, 1992. The Department alleged that the Debtor was operating its business pursuant to section 1108 of the Bankruptcy Code and MDNR was overseeing post-closure care of Valley's facility in Louisiana, Missouri. The State, in the first count of MDNR's complaint, alleged that 28 U.S.C. § 959(b) obligates Valley to comply with Missouri's Hazardous Waste Regulations that require an owner or operator of a hazardous waste facility to provide the State with financial assurance for post-closure care of a closed hazardous waste site. MDNR further alleged, in the second count of its complaint, that 28 U.S.C. § 959(b) requires Valley to adhere to the state regulations imposing duties to monitor the groundwater at the Louisiana facility, maintain records of those groundwater tests and report the test results to the State during the thirty-year post-closure period. The Department asked the Court to order Valley to:

(a) satisfy the state regulation's financial assurance requirements;

(b) submit groundwater monitoring reports for the Louisiana, Missouri site for 1991;

(c) monitor the groundwater and report the results to the State for the remainder of the thirty-year post-closure period; and

(d) comply with all applicable C.F.R. provisions, state hazardous waste laws and state hazardous waste regulations for the remainder of the thirty-year post-closure period.

2. The Official Unsecured Creditors' Committee ("Committee") moved to intervene in the action between the MDNR and Valley. The Committee argued that the compliance MDNR's complaint sought from Valley would deplete the estate's resources. Because compliance would deplete the estate's assets, the Committee maintained that it had an interest in the suit and, therefore, the right to intervene. After a hearing, the Court granted the Committee's motion to intervene.

3. The Debtor filed an answer to MDNR's complaint in which Valley maintained that it no longer owned the Louisiana, Missouri site to which the State's complaint referred. Valley admitted that it had not submitted an annual groundwater monitoring report for the Louisiana site in 1991.

4. MDNR filed an amended complaint which named the Committee as an additional defendant and restated the allegations contained in the first complaint.

5. The Committee filed an answer to the amended complaint on November 18, 1992.

6. The parties briefed the legal issues and agreed to have the Court decide this case on the basis of those briefs, a joint stipulation of facts and the record as a whole.

### FINDINGS OF FACTS

After considering the record as a whole and, in particular the parties' joint stipulation of facts, the Court makes the following findings:

1. MDNR is a duly authorized state agency of the State of Missouri created under § 10 of the Omnibus State Reorganization Act of 1974 to, among other things, administer the provisions of the Missouri Hazardous Waste Management Law, Mo. Ann.Stat. § 260.350 *et seq.* (Vernon 1990) and the rules and regulations promulgated thereunder. MDNR is currently overseeing post-closure care of the Surface Impoundments located on the Leasehold Property, as defined below.

2. Valley is one of several companies which filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 4, 1992.

3. The facility that is the subject of this adversary proceeding (the "Facility") is located outside of the City of Louisiana, Pike County, Missouri.

4. Two parcels of real estate, one approximately 12 acres large and the other about 7.75 acres in size, comprise the acreage upon which the Facility sits. In 1960, Valley leased the 12 acre parcel from Andrew J. Murphy, Jr. ("Murphy"). In November 1989, Valley and Margaret R. Sheehan ("Sheehan"), Murphy's daughter who succeeded him as Lessor, extended that Lease for ten years, through February 29, 2000. The Court will refer to the 12 acres which Valley leased from Murphy and Sheehan as the "Leasehold Property".

5. Valley leased the remaining 7.75 acres, situated to the northwest of the Leasehold Property, first from the Gulf, Mobile and Ohio Railroad Company, and then in 1973, from the Illinois Central Gulf Railroad Company ("Illinois Central"). On November 26, 1975, Illinois Central sold this property to Valley. The Court will refer to this portion of the property as the "Fee Property".

6. Valley started the Facility in 1947 and operations there initially consisted of annealing and drawing pipe and tubing to required sizes. Valley also conducted pipe threading and straightening operations and normal warehousing and sale operations.

7. In the late 1950's or early 1960's, Valley added a pickling operation to the Facility. Valley installed a second pickling operation around 1962. The first step in Valley's normal pickling operation consisted of rinsing pipe in water to remove loose dirt and debris. The pipe was then dipped in a dilute sulfuric acid solution to remove rust and scale, and again rinsed with water to remove the acid. As a last step, the pipe was immersed in water-soluble oil for rust protection. A caustic soda solution was always available to remove paint, oil or grease from the pipe. The majority of the material received at the Facility was rusty, but not painted or oiled.

8. The wastes generated by the pickling process included contaminated rinse water, spent acid and sludge from the caustic bath. The caustic solution was not replaced, but was regenerated by adding soda as needed.

9. In late 1969, Valley installed a rinse-water treatment system for the pickling operation, which consisted of a 5,000–gallon treatment tank and settling basin, or lagoon. The rinse water was neutralized prior to going to the lagoon and the neutralized water was piped to Noix Creek after settling. The spent acid was picked up for disposal; the sludge from the caustic tank was sent to a landfill. Valley received Operating Permit No. E–3277 on January 5, 1970, for this treatment system.

10. About 1974, Valley constructed a second lagoon. The spent acid and rinse water were placed into the original lagoon and, after settling, the liquid was pumped into the second lagoon. The surface area of the two lagoons was sufficient for evap-

oration to handle the excess water, so no more water was piped to Noix Creek. The Operating Permit was canceled, because Missouri regulations did not require a permit for a nondischarge system.

11. In 1980, Valley submitted a permit application for the existing lagoons under section 3005(a) of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6925(a). Sometime in 1981, a third lagoon was added and connected to the second lagoon. In 1982, Valley submitted a revised RCRA Part A application which included the new lagoon. The Facility was assigned EPA I.D. No. MOD006276349.

12. Between 1982 and 1988, Valley closed the three lagoons, designated as surface impoundments (the "Surface Impoundments"), pursuant to a closure plan dated January 21, 1987 as amended by a letter dated February 23, 1987 (together, the "Closure Plan").

13. The U.S. Environmental Protection Agency ("EPA") and MDNR approved the Closure Plan by letter dated March 12, 1987.

14. On or about June 28, 1988, Valley sent to MDNR and MDNR received a RCRA Surface Impoundment Closure Certification Statement certifying that Valley had completed closure of the Surface Impoundments in accordance with the approved Closure Plan. An on-site inspection MDNR performed confirmed the Closure Certificate Statement.

15. The Surface Impoundments are located in the eastern portion of the Leasehold Property.

16. By letter dated October 7, 1988, MDNR notified Valley that Valley was no longer required to maintain financial assurance for closure or liability coverage for sudden accidental occurrences at the Facility. The same letter stated that "[f]inancial assurance for post-closure care must still be maintained."

17. Valley ceased all manufacturing operations at the Facility by June 1990. Valley and the EPA entered into an Administrative Consent Order ("ACO") on September 26, 1990.

18. Prior to 1992, Valley satisfied the financial assurance requirement for the Facility by the method known as the financial test. The financial test provides a set of financial criteria which, if passed, demonstrates an ability to pay for post-closure care without setting aside funds in a trust fund or obtaining a third party financial mechanism that would guarantee an available source of funds. The cost estimate of $196,600 for post-closure care contained in this document includes groundwater monitoring costs.

19. By letter dated October 9, 1990, Valley informed the EPA of its plans to sell and assign all of the real estate and property which was subject to the ACO. Valley did not send MDNR such a letter.

20. On October 25, 1990, Valley assigned all of its right, title and interest in the Leasehold Property to Wayne B. Smith, Inc. (the "Assignment"). In addition to the Assignment, the Purchase Agreement assigned the Lease and Valley's interest in the Leasehold Property to Pike Steel. Wayne B. Smith of Wayne B. Smith, Inc., is a principal of Pike Steel. Therefore, for all practical purposes, Pike Steel holds the interest in the Leasehold Property.

21. On January 21, 1991, Valley conveyed the Fee Property to Pike Steel, Inc. ("Pike Steel") via General Warranty Deed. The conveyance was subject to three exceptions:

A. reservation of mineral rights by Illinois Central by Deed dated November 26, 1975, and recorded in Book 318, Page 6211, of the Recorder of Deeds of Pike County, Missouri;

B. the rights and responsibilities of Valley pursuant to the Administrative Consent Order ("ACO") dated September 26, 1990, by and between Valley and the U.S. Environmental Protection Agency ("EPA"); and

C. the rights of Valley pursuant to section 11 of the Agreement of Purchase and Sale with Assignment of Lease by and between Valley and Pike Steel dated January 21, 1991 (the "Purchase Agreement").

The deed running from Valley to Pike Steel, by incorporating section 11 of the Purchase and Sale Agreement, created a right of entry in favor of Valley under the terms of which Valley could enter the property[1] at any time in order to perform the duties the ACO imposed on it.

22. On January 21, 1991, Valley conveyed to Pike Steel all buildings, improvements and personal property on the Leasehold Property.

23. By letter dated March 5, 1992, MDNR informed Valley that its annual updated post-closure care financial assurance was due on February 28, 1992 and had not been received.

24. By letter dated March 25, 1992, Valley informed MDNR that it had filed for bankruptcy protection.

25. MDNR issued a Letter of Warning dated April 13, 1992 to Valley citing Valley's failure to provide post-closure financial assurance and Valley's failure to advise MDNR of the bankruptcy within ten days of its filing.

26. Valley responded to the Letter of Warning with a letter from its attorneys, dated April 20, indicating the need to discuss the matter with MDNR's counsel and, if necessary, to present related issues to the bankruptcy court for resolution.

27. In early 1990, Valley submitted to MDNR a Post–Closure Groundwater Monitoring Plan for the Facility.

28. Valley performed or had performed groundwater monitoring reports for 1991. These reports, dated February 26, 1991, May 31, 1991, August 22, 1991, and November 21, 1991, were submitted to MDNR and were received April 5, 1991, July 3, 1991, November 8, 1991, and January 27, 1992, respectively.

29. On May 19, 1992, Valley and MDNR discussed the fact that Valley had not filed a 1991 annual groundwater monitoring report. Valley explained that to proceed with preparation of the report would require creditor and court approval. Valley con-firmed this conversation by a letter dated May 20, 1992 day and received by MDNR on May 22.

30. By letter dated May 29, 1992, MDNR informed Valley that MDNR had not received Valley's 1991 annual groundwater monitoring report.

31. Also on May 29, 1992, MDNR issued Notice of Violation No. 2922 to Valley for failure to submit a 1991 annual groundwater report.

32. Since completion of closure, and as of the date of this Stipulation, no hazardous material has been released from the Surface Impoundments or from the Facility.

33. As of the date of this Stipulation, Valley has not submitted a post-closure financial assurance method on the Facility for 1992, and MDNR has not received one.

34. As of this date, Valley has not submitted a 1991 annual groundwater monitoring report for the Facility, and MDNR has not received one.

35. As of this date, no money has been spent by MDNR for post-closure financial assurance or groundwater monitoring.

### DISCUSSION

Title 28, section 959(b) of the United States Code obligates a debtor in possession to "manage and operate the property in ... [its] ... possession ... according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof."

The MDNR asserts that pursuant to 28 U.S.C. § 959(b) Valley must comply with various state regulations requiring it to fulfill groundwater monitoring and reporting obligations and provide financial assurance that such obligations will be satisfied. Section 959(b), by its terms only applies when the debtor is managing and operating property of which it has possession. Valley argues that section 959(b) does not ap-

1. The language of tne Purchase and Sale Agreement created a limited right of entry to the entire Facility (both the Fee Property and the Leasehold Property) in favor of Valley.

ply in this case because it does not possess the Facility, having transferred its interests in both the Leasehold Property and the Fee Property to Pike Steel. MDNR insists that Valley has constructive possession of the Facility because it reserved the duty to comply with the ACO and created a right to enter the Facility when it transferred title to the Facility to Pike Steel.

The State does not present any case law to support its position that section 959 applies to debtors in constructive possession of property and the Court has not found any cases that so hold. In support of its position, MDNR cites to Black's Legal Dictionary which defines possession as "[t]he detention and control, or the manual or ideal custody, of anything which may be the subject of property, for one's use and enjoyment, either as owner or as the proprietor of a qualified right in it, and either held personally or by another who exercises anyone's place and name.... A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion and control over a thing, either directly or through another person or persons, is then in constructive possession of it." *Black's Legal Dictionary* 1047 (5th ed. 1979). The MDNR argues that Valley's right to enter the Facility coupled with its intent to exercise dominion over the Facility pull Valley within the definition of constructive possession. As evidence of Valley's intent to exercise dominion over the Facility, MDNR points to Valley's conduct after transferring the Facility to Pike Steel, including: its continued monitoring of the Facility's ground water, its making the necessary reports to MDNR and its providing financial assurance to the State.

The Court cannot agree with the MDNR's position. Section 959(b) applies when the debtor is managing and operating property it possesses. In this case, the debtor does not have possession of the Facility. Under the Code's broad definition of property of the estate, the right to enter the Facility, which Valley received from Pike Steel before filing bankruptcy, became part of the Debtor's estate. While the debtor may possess a limited right to enter the Facility, it does not possess the property. Further, the Debtor does not have constructive possession of the property[2] for it no longer has an intent to exercise dominion or control over the Facility even if it did have such an intent in the past.[3]

■ The Court does not base its opinion that 28 U.S.C. § 959(b) does not apply to this case solely on the fact that Valley does not have possession of the Facility. As an additional ground for its decision, the Court holds that 28 U.S.C. § 959(b) does not apply to Valley because Valley is liquidating its estate. Courts that have considered the question disagree whether 28 U.S.C. § 959 applies to debtors who have ceased operations and are liquidating their businesses. *In re Heldor Indus., Inc.*, 131 B.R. 578 (Bankr.N.J.1991); *In re Corona Plastics, Inc.*, 99 B.R. 231 (Bankr.N.J.1989); *In re Scott Housing Sys. Inc.*, 91 B.R. 190 (Bankr.S.D.Ga.1988); *Walsh v. West Virginia*, 70 B.R. 786 (Bankr.N.D.Cal.1987); *In re Bourne Chem. Co.*, 54 B.R. 126 (Bankr. N.J.1984); *c.f. In re Wall Tube & Metal Prods. Co.*, 831 F.2d 118 (6th Cir.1987); *In re Stevens*, 68 B.R. 774 (D.Me.1987).

The *Wall Tube & Metal Prods. Co.* court reasoned that "whether a trustee is liquidating, managing, or reorganizing the debtor's estate, his efforts under the Code remain the same—the consolidation of the estate's assets to the benefit of the creditors." 831 F.2d at 122. The MDNR asks this court to follow the Sixth Circuit's reasoning which has a certain appeal. However-

---

**2.** The Court expresses no opinion as to whether a debtor or trustee's constructive possession of property will trigger 28 U.S.C. § 959(b).

**3.** The State, has also asked the Court to recognize that Valley's case did not begin as a liquidation bankruptcy and hold that Section 959(b) obligated Valley to perform the monitoring and

reporting required by the ACO during those ten months preceding the conversion of this to a planned liquidation under Chapter 11. The Court refuses to do this because Valley did not have possession of the Facility during that period of time which as explained above precludes the application of section 959(b).

er, the language of section 959(b) and its history persuade the Court that Congress did not intend for the provision to apply in liquidation cases.

The Supreme Court in *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl Protection*, 474 U.S. 494, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986), briefly discussed 28 U.S.C. § 959(b). The *Midlantic* court based its holding that "a trustee may not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards" on the pre-Code, common law restrictions on a trustee's power to abandon property of the estate. *Id.* at 507, 106 S.Ct. at 762. The majority opinion acknowledged but did not directly answer Midlantic Bank's contention that section 959(b) does not apply when a trustee is liquidating an estate. Instead, the Court, with limited discussion, stated that section 959(b) "provides additional evidence that Congress did not intend for the Bankruptcy Code to pre-empt all state laws." *Id.* at 505, 106 S.Ct. at 761. Justice Rehnquist in his dissenting opinion in the *Midlantic* case, suggested that 28 U.S.C. § 959(b) does not apply to a trustee or debtor in possession who is liquidating the estate, when he wrote, "[a]ssuming that temporary management of or operation of a facility during liquidation is governed by § 959(b), I believe that a trustee's filing of a petition to abandon, as opposed to continued operation of a site pending a decision to abandon, does not constitute 'manage[ment]' or 'operat[ion]' under that provision [28 U.S.C. § 959(b)]."

Courts which have held that section 959(b) does not apply when a debtor has ceased operations and is liquidating its estate have looked to the purpose section 959(b) was intended to serve. *In re Corona Plastics, Inc.*, 99 B.R. 231 (Bankr.N.J. 1989) (C.J. Commisa); *In re Borne Chem. Co.*, 54 B.R. 126 (Bankr.N.J.1984) (J. De-

Vito). Noting that in passing 28 U.S.C. § 959(b) Congress sought to "negate the idea that a trustee or debtor in possession 'could ignore the rules of law of the state of operation affecting the conduct of the business committed to his charge'", 54 B.R. at 135, quoting *Palmer v. Webster & Atlas Nat'l Bank*, 312 U.S. 156, 166, 61 S.Ct. 542, 546–47, 85 L.Ed. 642 (1941), these courts have reasoned that applying the provision to a trustee or debtor in possession who is liquidating an estate would not further the purpose Congress intended the section to serve. The *Corona Plastics* court placed particular emphasis on the *Palmer* court's use of the phrase "conduct of the business", the Chief Judge Commisa believed the high court's use of this phrase demonstrated that section 959(b) does not apply when a debtor has closed down its operations and is liquidating its estate. 99 B.R. at 236.

The Bankruptcy Court for the Southern District of Georgia has also held that 28 U.S.C. § 959(b) does not apply when a trustee or debtor in possession is liquidating the estate. *In re Scott Housing Sys.*, 91 B.R. 190 (Bankr.S.D.Ga.1988). The *Scott Housing* court examined the language of 28 U.S.C. § 959(a)[4] and (b) and maintained that subsection (b)'s "manage and operate" language, when read in conjunction with subsection (a)'s "carrying on business" language "evidence[s] a statutory intent that Section 959 applies when the business is being operated, not when its operations have ceased and its assets are being liquidated." 91 B.R. at 196. The court bolstered its opinion with authority from the Second Circuit holding that "mere administration and liquidation is not carrying on the business as contemplated by [section 959's predecessor]." *Id.* at 196 quoting *Vass v. Conron Bros. Co.*, 59 F.2d 969 (2d Cir.1932) (J.L.Hand). The *Scott Housing* court distinguished the Sixth Cir-

---

**4.** 28 U.S.C. 959(a) provides: "Trustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property. Such ac-

tions shall be subject to the general equity power of such court so far as the same may be necessary to the ends of justice, but this shall not deprive a litigant of his right to trial by jury."

cuit's decision in *Wall Tube & Metal Prods. Co.*, 831 F.2d 118 (6th Cir.1987).

The Court is persuaded by the reasoning of those courts which hold that 28 U.S.C. § 959(b) does not apply to a debtor that is liquidating its estate. Both because Valley is liquidating its estate and because Valley does not possess the Facility, the Court holds that section 959(b) does not apply to obligate Valley to: satisfy the state regulation's financial assurance requirements; submit groundwater monitoring reports for the Louisiana; Missouri site for 1991; monitor the groundwater and report the results to the State for the remainder of the thirty-year post-closure period or comply with all applicable C.F.R. provisions, state hazardous waste laws and state hazardous waste regulations for the remainder of the thirty-year post-closure period.[5]

An Order consistent with this Memorandum Opinion will be issued this date.

### *ORDER*

For the reasons set forth in the memorandum opinion filed this date, IT IS ORDERED that:

(1) the Missouri Department of Natural Resource's request that this Court order Valley Steel Products Co. to immediately satisfy the financial assurance requirement set out in 40 C.F.R. §§ 265.144 and 265.145 and the Missouri Hazardous Waste Management law and regulations, 10 CSR 25–7.265, to meet the post-closure financial assurance requirement for the hazardous waste surface impoundment located in Louisiana, Missouri defined in the Memorandum opinion issued this date as the Facility, IS DENIED;

(2) the Missouri Department of Natural Resource's request that this Court order Valley Steel Products Co. to immediately submit the 1991 Annual Groundwater Monitoring Report as set out in 40 C.F.R.

265. 94, 40 C.F.R. 265.17 through 265.120 and 40 C.F.R. 265.310 and the Missouri Hazardous Waste Management law and regulations, 10 CSR 25–7.265, to meet the annual groundwater monitoring requirement for the hazardous waste surface impoundment located in Louisiana, Missouri defined in the Memorandum opinion issued this date as the Facility, IS DENIED; and

(3) the Missouri Department of Natural Resource's request that this Court order Valley Steel Products Co. to comply with all applicable C.F.R. provisions, the Missouri Hazardous Waste Management law and regulations for the remainder of the thirty year post-closure period applicable to the hazardous waste surface impoundment located in Louisiana, Missouri defined in the Memorandum opinion issued this date as the Facility, IS DENIED.

---

**5.** MDNR has filed a two proofs of claim against Valley's estate numbered 494 and 495 by the Court. The State did not argue the validity or the amount of its claim during this adversary proceeding and indicated that it had chosen to "reserve[ ] its legal argument regarding the validity and amount of ... [its] ... proof of claim

until this [959(b) ] initial issue is determined." [MDNR brief at 13]. The Court's decision today does not affect MDNR's proofs of claim. Having filed a timely proofs of claim against Valley's estate, MDNR will be treated like Valley's other general, unsecured creditors.